FREDERICKS v GENERAL MOTORS CORPORATION

Docket No. 62960. Argued April 15, 1980 (Calendar No. 3).—Decided November 2, 1981.

Robert Fredericks brought an action against the General Motors Corporation for the loss of his hand suffered while he was operating a power press in the course of his employment at the Manistee Drop Forge Company to manufacture parts for the defendant. The die set being used at the time of the injury in the press at the Manistee Drop Forge Company had been built by the Lindell Drop Forge Company, and was owned by the defendant. The plaintiff alleged that the defendant negligently supplied the dies to his employer without a safety guard and should have known that the dies would be likely to be used in an unsafe manner. He also claimed that the absence of a guard on the dies subjected the defendant to strict liability for supplying an unreasonably dangerous product and offered proofs concerning the unsafe use of dies in the industry generally. The Manistee Circuit Court, Charles A. Wickens, J., upon remand by the Court of Appeals for trial (48 Mich App 580), decided that the plaintiff's evidence concerning unsafe use of the dies was inadmissible and granted a directed verdict for the defendant, after presentation of the plaintiff's other proofs, on the ground that there was no evidence that the defendant knew that the dies were likely to be used in a negligent manner by the Manistee Drop Forge Company. The Court of Appeals, T. M. Burns, P.J., and M. J. Kelly and D. F. Walsh, JJ., affirmed in a memorandum opinion (Docket No. 77-5220). Plaintiff appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice Coleman and Justices Levin, Fitzgerald, and Ryan, the Supreme Court held:

1. To sustain a cause of action for negligent entrustment of a

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 8, 9] 8 Am Jur 2d, Bailments § 276.

[3] 8 Am Jur 2d, Bailments §§ 278, 279.

Products liability: Industrial presses. 8 ALR4th 70.

[4, 5] 63 Am Jur 2d, Products Liability §§ 174, 178.

[6, 7] 8 Am Jur 2d, Bailments § 317.

[10] 8 Am Jur 2d, Bailments §§ 276, 317.

manufactured product to another party a plaintiff must prove that the defendant knew or should have known of the propensities of the entrusted party for taking unreasonable risks. The plaintiff acknowledges that he could not prove that General Motors Corporation knew that the dies would be used in an unsafe manner, but he maintains that the defendant should have known as much. He complains about poor safety conditions throughout the industry and argues that the defendant is in a position, because of its "economic clout", to require the manufacturers of its parts (job shops) to provide safety guards on presses or dies.

2. What the defendant could accomplish has no bearing on a claim of negligent entrustment. The plaintiff did not prove that the defendant knew that all job shops were unsafe or that the defendant had special knowledge of particular conditions at the Manistee Drop Forge Company which would put the defendant on notice that use of the dies in an unsafe manner was likely there. Therefore, the plaintiff has not proven his claim of negligent entrustment.

3. The plaintiff also claims that the unguarded die set is unreasonably dangerous and therefore defective so that its supplier is liable for personal injuries sustained by its use on a theory of products liability. The plaintiff's injury may well have resulted from the absence of a guard on the dies; however, the accident also might have been prevented by guarding on the power press, or by other methods of guarding the point of operation. A product is defective if it is not reasonably safe for its foreseeable uses. An unguarded die may be used in a reasonably safe manner in a guarded press or in an unsafe manner in an unguarded press. At the time of the plaintiff's injury a statutory duty was imposed upon employers to establish and maintain conditions of work which are reasonably safe and healthful for employees. In the light of this duty, it cannot be held as a matter of law that it was foreseeable to the defendant that the product supplied for use by the plaintiff's employer would be used in an unsafe manner.

4. There was no error in the trial court's ruling that the other evidence offered by the plaintiff was inadmissible. The evidence concerning accidents involving other General Motors dies was not admissible to prove notice to the defendant because it concerned accidents which occurred after the accident in issue and which were irrelevant to this action. The proffered proof of writings and publications of the defendant criticizing the use of unguarded dies lacked sufficient foundation for its admission because the plaintiff was unable to show their rele-

vance to the occurrence in this case or to the testimony of the defendant's safety engineer.

Affirmed.

Justice Moody, joined by Justice Williams, dissented. He would hold that the relationship between the plaintiff and defendant in this case gives rise to a duty on the part of the defendant for the benefit of the plaintiff under the doctrine of negligent entrustment.

1. An entrustor may be subject to liability if he had reason to know that the entrustee is likely to use the entrusted chattel in a manner involving an unreasonable risk of physical harm. Whether the defendant had reason to know that the dies would be used in an unsafe manner should be a question for the jury. If the defendant had information from which a person of reasonable intelligence, or of the superior intelligence of the defendant, would infer that the risk in question exists, or such a person would govern his conduct upon the assumption that the risk exists, then the defendant had reason to know of the risk.

2. The plaintiff introduced evidence sufficient to withstand a motion for directed verdict. The safety director of the defendant's Saginaw Steering Gear Division testified that many job shops have power press operations which require their employees to reach into the "zone of danger" between the dies mounted on the power presses. The hand-loading process is a standard procedure at job shops, and the cost of providing guards for presses and dies may be prohibitive for job shops like Manistee Drop Forge Company. That testimony by an expert on safety was sufficient evidence to create a question for the jury whether General Motors had reason to know that Manistee Drop Forge Company would use the dies in a manner involving an unreasonable risk of harm to its employees. Therefore, it was error to grant the defendant's motion for a directed verdict.

## OPINION OF THE COURT

1. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE.

   To sustain a cause of action for negligent entrustment of a chattel to another party a plaintiff must prove that the defendant knew or should have known of the propensities of the party entrusted for taking unreasonable risks of injury.

2. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE — EVIDENCE — SUFFICIENCY.

   Sufficient peculiarities of the party entrusted by a defendant with

a chattel to put the defendant on notice of the likelihood that the chattel would be used in an unsafe manner must be demonstrated by the plaintiff to prove a claim that the entrustment was negligent in the absence of proof that the defendant knew of the propensities of the party entrusted for taking unreasonable risks of injury.

3. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE — EVIDENCE — SUFFICIENCY.

A plaintiff failed to prove a claim that a defendant negligently entrusted a set of dies without a safety guard to the plaintiff's employer for use in a power press to make parts for the defendant where the plaintiff generally complained of poor safety conditions throughout the parts jobbing industry and argued that the defendant was in an economic position to require improvements in the conditions under which its parts were made but failed to prove that the defendant knew that all job shops were unsafe or that the defendant had special knowledge of the plaintiff's employer which would put the defendant on notice that the employer was likely to use the defendant's dies in an unsafe manner.

4. PRODUCTS LIABILITY — DEFECTIVE PRODUCT — UNREASONABLY DANGEROUS — WORDS AND PHRASES.

A product is unreasonably dangerous and therefore defective so that its supplier is liable for personal injuries sustained by its use if the product is not reasonably safe for its foreseeable uses.

5. PRODUCTS LIABILITY — DEFECTIVE PRODUCT — UNREASONABLY DANGEROUS — DIES — OCCUPATIONAL SAFETY ACT.

It cannot be held as a matter of law that it was foreseeable to a defendant that a set of dies without a safety guard which the defendant owned and supplied to the plaintiff's employer for use in a power press to make parts for the defendant would be used in an unsafe manner without guards where an unguarded die may be used in a reasonably safe manner by other methods of guarding the point of operation of a power press and at the time of the plaintiff's injury the occupational safety act required each employer to maintain conditions of work which are reasonably safe and healthful for employees (MCL 408.852; MSA 17.49[2]).

6. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE — EVIDENCE — ADMISSIBILITY — RELEVANCE.

Evidence of accidents involving other dies without safety guards belonging to a defendant manufacturer was irrelevant and

inadmissible to prove that the defendant should have known that the dies it supplied to the plaintiff's employer would be used in an unsafe manner where the evidence concerned accidents which occurred after the injury in issue.

7. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE — EVIDENCE — ADMISSIBILITY — RELEVANCE.

Writings and publications of a defendant manufacturer criticizing the use of dies without safety guards are inadmissible on the issue of whether the defendant should have known that such dies were likely to be used in an unsafe manner by the plaintiff's employer in a power press to make parts for the defendant where there was no showing of the relevance of the proffered evidence to the plaintiff's injury or to the testimony of the defendant's safety engineers.

DISSENTING OPINION BY BLAIR MOODY, JR., J.

See headnote 1.

8. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE.

*A defendant may be liable for negligent entrustment of a chattel to another if the defendant had reason to know that the one entrusted is likely to use the chattel in a manner involving an unreasonable risk of physical harm.*

9. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE.

*A defendant had reason to know that the dies it supplied to the plaintiff's employer would be used in an unsafe manner where the defendant had information from which a person of reasonable intelligence, or the superior intelligence of the defendant, would infer that the risk in question exists, or such a person would govern his conduct upon the assumption that the risk exists.*

10. NEGLIGENCE — NEGLIGENT ENTRUSTMENT — KNOWLEDGE — EVIDENCE — SUFFICIENCY.

*Whether a defendant manufacturer had reason to know that a set of dies without a safety guard, entrusted to the plaintiff's employer for use in a power press to make parts for the defendant, would be used in an unsafe manner is for the jury where an expert on safety employed by the defendant testified that many job shops manufacturing parts require their employees to reach between dies mounted on power presses, the hand-loading process is a standard procedure at job shops, and the cost of providing guards for power presses and dies may be prohibitive for such job shops.*

*McCroskey, Libner, VanLeuven, Kortering, Cochrane & Brock* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel* and *Charles H. Worsfold); Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *James R. Kohl),* and *Otis Smith,* General Counsel *(Joseph M. Rozek,* of counsel), for defendant.

Amici Curiae:

*Dickinson, Wright, McKean, Cudlip & Moon* (by *John E. S. Scott* and *Richard A. Glaser)* for Michigan Defense Trial Counsel.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Nicholas J. Rine)* and *Goodman, Eden, Millender & Bedrosian* (by *Joan Lovell)* for Michigan Trial Lawyers Association.

KAVANAGH, J. *(for affirmance).* The plaintiff was an employee of Manistee Drop Forge Company when he lost the major part of his left hand while operating an unguarded power press during the course of his employment. He sued to recover damages from the defendant who owned the die set being used in the press at the time of the accident.

The dies themselves were not manufactured by the defendant, but had been built by Lindell Drop Forge and were used by Lindell to manufacture parts for the defendant. When a labor dispute closed Lindell, defendant acquired possession of the dies and negotiated a contract with Manistee Drop Forge to have parts manufactured by Manistee with the dies. Under the arrangement Manistee was to make revisions in the dies as necessary

to adapt them to use on a press owned by Manistee.

The suit which plaintiff filed originally on December 29, 1970 sought recovery on the theory of negligence, implied warranty and strict liability. Following opening arguments the court granted defendant's motion for summary judgment.

On appeal the Court of Appeals reversed and remanded for a new trial, holding that the trial court erred in finding as a matter of law that defendant as owner of the dies had no duty to warn or duty to prescribe the method in which they were used. The Court held: "We find that an allegation that a defendant supplied a chattel to a party knowing the chattel would be used in a negligent manner states a cause of action, at least preliminarily, against the defendant for injuries to others resulting from the party's negligence." *Fredericks v General Motors Corp,* 48 Mich App 580, 583; 211 NW2d 44 (1973).

At the second trial at the close of plaintiff's proofs the trial court granted defendant's motion for a directed verdict, holding that there was no proof of any knowledge on the part of defendant that the dies were likely to be used in a negligent manner.

The Court of Appeals affirmed and we granted leave to appeal to consider (1) whether, prior to entrusting a die set to a manufacturer of automobile components, defendant had a duty to place guards on the die set or warn the component manufacturer of hazards attendant in its use, and (2) whether the trial court erred in excluding evidence and exhibits offered by the plaintiff in support of his negligent entrustment theory.

We answer both questions in the negative and affirm.

To sustain a cause of action for negligent entrustment a plaintiff must prove that defendant knew or should have known of the unreasonable risk propensities of the entrustee. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977); 2 Restatement Torts, 2d, § 390, p 314. In this instance plaintiff needed to prove that General Motors knew or should have known that Manistee Drop Forge would use the dies in such a manner as to create the risk of amputation. Plaintiff's attorney acknowledged, both at trial and during oral argument before this Court, that he could not prove that General Motors in fact *knew* that Manistee Drop Forge would use its dies in an unsafe manner. Plaintiff maintained, however, that defendant *should have known* as much.

To prove an entrustor should have known an entrustee was likely to use the entrusted chattel in an unsafe manner, peculiarities of the entrustee sufficient to put the entrustor on notice of that likelihood must be demonstrated. Plaintiff introduced no evidence of peculiarities of Manistee Drop Forge, but rather complained of poor safety conditions industry-wide.

At oral argument plaintiff's attorney suggested: "The case today that we're dealing with, I think everybody recognizes, is not just Robert Fredericks * * *. What we're debating today is clearly power press safety." Plaintiff opined that poor working conditions at job shops are rampant. As a solution, plaintiff suggests that if defendant required all jobbers to provide guards on presses or dies the jobber would comply. General Motors could effectuate this result, suggests plaintiff, because of its "economic clout".

What the defendant could accomplish on account of its "economic clout" or otherwise has no bearing on negligent entrustment.

Plaintiff's assertion that bad safety conditions pertain at *all* job shops is subject to proof. If plaintiff had proved defendant knew that all job shops were unsafe he would have established that defendant knew Manistee Drop Forge was not to be entrusted with the dies. Plaintiff did not prove this nor that defendant had special knowledge of Manistee Drop Forge which would put defendant on notice.

Plaintiff did not prove negligent entrustment.

As an alternative to negligent entrustment plaintiff contends that an unguarded die is unreasonably dangerous and should, therefore, be considered "defective", giving rise to products liability on the part of the supplier for personal injuries sustained by its use. Plaintiff argues that his injury was a result of the absence of a guard on this particular die, that General Motors could have provided a guard, and that the failure to provide a guard should result in liability. Plaintiff's injury may well have resulted from the absence of guarding; however, this accident might have been prevented by guarding on the press instead of the die. There are numerous methods of guarding the point of operation on a power press. Die guards are merely one.

A product is defective if it is not reasonably safe for its foreseeable uses. An unguarded die may be used in a reasonably safe manner in a guarded press or in an unsafe manner in an unguarded press. At the time of plaintiff's injury 1967 PA 282 required that "[e]ach employer shall establish and maintain conditions of work which are reasonably safe and healthful for employees". In light of this statutory duty imposed on Manistee Drop Forge we cannot hold as a matter of law that it was foreseeable to defendant that the product it sup-

plied would be used in an unsafe manner rendering it defective.

As to the second issue, we find no error in the trial court's evidentiary rulings. The evidence offered by plaintiff to establish accidents involving other General Motors dies was not admissible to prove notice to defendant as they occurred after the accident in issue and were irrelevant to this action. The proffered proof of defendant's own writings and publications decrying the use of unguarded dies lacked sufficient foundation for admission as plaintiff's counsel was unable to relate them to the Fredericks occurrence or the testimony of defendant's safety engineer.

The Court of Appeals is affirmed.

COLEMAN, C.J., and LEVIN, FITZGERALD, and RYAN, JJ., concurred with KAVANAGH, J.

BLAIR MOODY, JR., J. *(for reversal).* Robert Fredericks was an employee of Manistee Drop Forge Company. Shortly after he began his employment with Manistee Drop Forge his left hand was severely injured while he was operating a power press. His hand was crushed in an unguarded die set owned by General Motors Corporation.

The die set had been manufactured by Lindell Drop Forge for General Motors. Lindell used the die set to manufacture parts for General Motors. A labor dispute closed Lindell Drop Forge. General Motors took possession of its dies and after contracting with Manistee to manufacture the parts, shipped the dies to Manistee Drop Forge.

Mr. Fredericks brought suit in 1970 to recover damages for the injury to his hand from the defendant, owner of the die set. Essentially, he claims that General Motors supplied a die set that presented a hazard to employees of Manistee Drop

Forge and that General Motors should have warned of or guarded against this danger. The trial court granted defendant's motion for summary judgment after the opening statements. The Court of Appeals, applying the doctrine of negligent entrustment, reversed and remanded for a new trial. *Fredericks v General Motors Corp,* 48 Mich App 580; 211 NW2d 44 (1973), *lv den* 390 Mich 805 (1973).

At the second trial the court granted defendant's motion for a directed verdict at the close of plaintiff's proofs. The trial court ruled that the plaintiff failed to produce any proof that General Motors had any knowledge that the dies would be used in a negligent manner. In addition, the court determined that General Motors had no knowledge as to the particular misuse of the dies at Manistee Drop Forge at the time of the injury to Mr. Fredericks.

The Court of Appeals affirmed in an unpublished memorandum opinion. We granted leave to appeal and directed the parties to include among the issues to be briefed "(1) whether, prior to entrusting a die set to a manufacturer of automobile components, defendant had or should have had a duty to place guards on the die set or warn the component manufacturer of hazards attendant in its use, and (2) whether the trial court erred in excluding evidence and exhibits offered by the plaintiff in support of his negligent entrustment theory". 407 Mich 896-897 (1979).

We would hold that the relationship between plaintiff and defendant gives rise to a duty: a legal obligation on the defendant's part for the benefit of the plaintiff. It is for a jury to decide whether the defendant should have warned the component manufacturer or the plaintiff; whether the defen-

dant should have placed guards on the die set; whether the defendant should have taken any other action to lessen the risk of injury; or whether the defendant acted in a reasonably prudent manner.

Since we would reverse on the issue of substantive law, we decline to address the question of whether the trial court erred in excluding certain evidence. Upon retrial, any proffered evidence would have to be evaluated in light of the law set forth in this opinion and the Michigan Rules of Evidence adopted after the second trial in this case.

In *Moning v Alfono,* 400 Mich 425, 443-444; 254 NW2d 759 (1977), this Court approved the doctrine of negligent entrustment set forth in 2 Restatement Torts, 2d, § 390, p 314:

"One who supplies directly or through a third person a chattel *for* the use of another whom the supplier *knows or has reason to know* to be likely because of his youth, inexperience, *or otherwise,* to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Emphasis added.)

There is no question that the entrustor-supplier, General Motors, should have expected that Robert Fredericks, an employee of the component manufacturer, would share in the use of the chattel. As to the question of knowledge of the likelihood of unsafe use, plaintiff's attorney admitted that he could not prove that General Motors *actually knew* that Manistee Drop Forge would use General Motors' die set in a dangerous manner.

However, according to § 390 of the Restatement, the entrustor may also be subject to liability if he

had *reason to know* that the entrustee is likely to use the entrusted chattel in a manner involving an unreasonable risk of physical harm.

"The words 'reason to know' are used throughout the Restatement of [Torts] to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor *would infer that the fact in question exists,* or that such person would govern his conduct upon the assumption that such fact exists." 1 Restatement Torts, 2d, § 12, p 19. (Emphasis added.)

Whether General Motors should have inferred that its die set would likely be used in a dangerous manner, *i.e.,* whether General Motors, in view of the evidence received by the court, had reason to know of the unsafe use of the die set at Manistee Drop Forge should be a question for the jury. The plaintiff introduced evidence sufficient to withstand a motion for directed verdict. The jury heard the testimony of Jack C. Gerwin, who at the time of the injury in this case was safety director of Saginaw Steering Gear Division of General Motors Corporation:

"*Q. [By Mr. Brock, Plaintiff's Attorney]:* And, a lot of job shops have operations set up that require their operators to reach into the die areas and the zone of danger?

"*A.* I have seen this.

"*Q.* Have you seen this often enough so that you are aware that this is more or less a standard way of proceedings *[sic]* in these small job shops?

"*A.* That's right. Let's face it; it costs money to guard presses.

"*Q.* And, most of the job shops do not have money to hire engineers and safety directors?

"*A.* That's right. Although, in most of the job shops,

they hire their own little boss that takes care of these
little incidentals. The purchaser is buying a safety
director and an engineer.

"*Q.* On this particular operation, did you gain the
impression from Mr. Fredericks' deposition that the
press was being activated with a single button?

"*A.* Yes, that is the impression that I got from the
deposition.

"*Q.* It was being fed with his hands?

"*A.* It was being fed with a right hand, let's see, no,
the left hand and being retracted from the die with the
right hand, the cycle with the right hand. So, there was
a great possibility of what happened to him because he
could load with his left hand and cycle with his right
hand.

*        *        *

"*Q. [By Mr. Brock, Plaintiff's Attorney]:* In looking at
it as a safety engineer, it appears it would be a rela-
tively simple method to design a revolving die or sliding
or progressive die for this operation?

"*A.* Not for a small outfit like Manistee Drop Forge.
It would costs *[sic]* maybe $40,000 to put that in.

"*Q.* Manistee Drop Forge would not have the eco-
nomic capacity to design and manufacture such a die?

"*A.* Well, this is, in a way, it is the entire press, the
whole sheet.

"*Q.* So, Manistee Drop Forge did not have the eco-
nomic power to develop such a system of operation?

"*A.* I wouldn't think so, because they are basically a
job shop, and they are doing this maybe three months
and then they have got a press sitting there they can't
use. And, they can't tie up their capital in this way. So,
they are doing the job on presses they can do many
other things."

This testimony would permit a jury to conclude
that General Motors had reason to know that
Manistee Drop Forge would use the dies in a
manner involving an unreasonable risk of harm to
its employees. There is no question that placing a
hand between dies mounted on a power press

poses a substantial risk of serious injury. The testimony of Mr. Gerwin indicates that many job shops have power press operations which require their employees to reach into the "zone of danger". This hand-loading process is a standard procedure at job shops. The cost of guarding presses and dies may be prohibitive for jobbers like Manistee Drop Forge.

These facts, testified to by a safety expert, are sufficient evidence for consideration by a jury. It is the jury who should decide whether General Motors should have inferred or assumed that there was a likelihood of an unreasonable risk of physical harm to the employees of Manistee Drop Forge. Jurors should have been permitted to determine if it was likely, given the evidence of costs to and procedures at job shops, that General Motors' dies would be used in a dangerous manner.

On appeal of a directed verdict for defendant we view the evidence in the light most favorable to the plaintiff and draw the reasonable inferences from the testimony which are in his favor. *Dodd v Secretary of State,* 390 Mich 606, 612; 213 NW2d 109 (1973). We conclude that it was error to grant defendant's motion for directed verdict. Under § 390 of the Restatement of Torts the defendant owed plaintiff a duty. Whether the defendant should have placed guards on the die set or taken other action is a question to be answered on retrial.

Accordingly, we would reverse and remand for a new trial.

Williams, J., concurred with Blair Moody, Jr., J.