# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1925

_____

Jeffery Allen Oppedahl; Angela Marie Oppedahl, Next friend WTO Next friend MJO Next friend SMO

*Plaintiffs - Appellants*

v.

Mobile Drill International, Inc., also known as Mobile Drill, L.L.C., formerly known as Mobile Drill Company, Inc.

*Defendant - Appellee*

Central Mine Equipment Company; USExploration Equipment Company; Navistar, Inc., formerly known as International Truck and Engine Corporation, formerly known as International Harvester Co.

*Defendant*s

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 16, 2018
Filed: August 7, 2018

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Plaintiff Jeffery Oppedahl was injured in a gruesome accident involving a truck-mounted drill and auger[1] that left him a quadriplegic. Oppedahl, his wife, and his children (collectively "**Plaintiffs**") sued Mobile Drill Company, Inc. ("**Mobile Drill**"), the manufacturer of the drill and auger. As relevant to this appeal, the district court[2] first dismissed Plaintiffs' strict products liability and negligence claims involving the drill, as well as those related consortium claims. The court then granted summary judgment to Mobile Drill on Plaintiffs' negligent entrustment claim involving the auger and the related consortium claims. Plaintiffs appeal. We now affirm.

## I. Background

Oppedahl was an experienced drill operator who worked for the Iowa Department of Transportation ("**IDOT**"). On January 16, 2013, Oppedahl was taking soil samples and became entangled in an unguarded rotating auger that was attached to a truck-mounted drill. The auger Oppedahl was using was first put into operation in 1990. IDOT later refurbished the auger and put it back into operation on or after August 5, 1999. The auger system did not have a safety cage or safety switches, which, according to Plaintiffs, could have prevented the accident.

On August 5, 2014, Plaintiffs filed an 11-count complaint and jury demand against the truck manufacturer, Navistar, Inc., and, because it was initially unclear who manufactured the auger involved in the accident, against three auger manufacturers: Mobile Drill, USExploration Equipment Company

---

[1]An auger is a long tube with a helical steel outcropping used to drill holes, similar to a screw or drill bit.

[2]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, adopting the report and recommendations of the Honorable Celeste F. Bremer, United States Magistrate Judge for the Southern District of Iowa.

("**USExploration**"), and Central Mine Equipment Company ("**Central Mine**"). The district court granted summary judgment to Navistar and dismissed it as a defendant, finding Iowa's statute of repose barred Plaintiffs from bringing products liability actions against Navistar.

USExploration later filed a motion for summary judgment, presenting both USExploration's and IDOT's records that showed it only sold IDOT three-and-a-half-inch augers, and the auger involved in the accident was a five-and-a-half-inch auger. Plaintiffs did not resist the motion. The district court held even if Plaintiffs had resisted the motion, there was no genuine dispute of material fact and USExploration was entitled to judgment as a matter of law. The district court then dismissed USExploration as a defendant.

After determining that the augers potentially involved in the accident did not have any of the three unique manufacturing characteristics of Central Mine augers, the parties jointly submitted a stipulation of dismissal of Central Mine as a defendant. Thus, Mobile Drill is the only remaining defendant.

In the complaint, Plaintiffs alleged causes of action for strict products liability, negligence related to the sale of the drill, negligence related to the sale of the auger under an alternative liability theory[3], loss of spousal consortium, and loss of parental

---

[3]Initially, Plaintiffs pled that enterprise liability theory applied. Enterprise liability theory "avoids the legal causation problem that arises from an inability to identify the manufacturer of the specific injury-causing product . . . by shifting responsibility to the industry for causing the injury because of the concert of action by manufacturers of such products through their trade associations or their collective action." Mulcahy v. Eli Lilly & Co., 386 N.W.2d 67, 72 (Iowa 1986). However, Plaintiffs instead argued that the alternative liability theory applied, and though they did not mention the theory in their complaint, they had alleged sufficient facts to support a negligence claim under that theory. Alternative liability theory, unlike enterprise liability theory, does address causation "with respect to the making or the

consortium. Mobile Drill moved to dismiss the complaint, and the district court dismissed Plaintiffs' strict liability and negligence claims related to the sale of the drill because Iowa's statute of repose had run, barring recovery. As a result, the district court also dismissed the related loss of consortium claims. However, the court found that Plaintiffs had sufficiently stated a claim for negligence related to the sale of the auger under an alternative liability theory; thus Plaintiffs' negligence claim involving the auger and related consortium claims remained.

Mobile Drill then moved for summary judgment on the remaining claims, and this portion of the case was assigned to a magistrate judge to resolve. The Plaintiffs resisted the motion and moved to amend the complaint to clarify the claims in light of the case's procedural history. The court granted Plaintiffs' motion, and the Plaintiffs amended their negligence claims to specifically allege Mobile Drill negligently entrusted the auger to IDOT. The court considered the amended complaint and found that Plaintiffs' negligent entrustment claims failed as a matter of law because they did not allege facts that would satisfy the knowledge requirement. As a result, the district court granted summary judgment to Mobile Drill. Plaintiffs now appeal.

---

providing of the [product] which brought about the injury." Id. Under alternative liability theory, "one of the parties must have caused the injury to plaintiff . . . [and] the burden of proof as to which actor caused the harm shifts to the defendants because there is uncertainty as to which of them caused the injury." Id. The district court held that Plaintiffs did not sufficiently allege enterprise liability, but that they did sufficiently allege alternative liability. Thus, for ease of understanding, we refer only to alternative liability theory in our recitation of the facts.

## II. Discussion

Plaintiffs make two broad claims on appeal. First, they argue that the district court erred by dismissing their claims against Mobile Drill for negligence and strict liability based on the running of the statute of repose. Second, they assert that the district court erred in granting Mobile Drill summary judgment on their negligent entrustment claim. We address each in turn.

### A. Negligence and Strict Liability

Plaintiffs argue that the district court's dismissal of their negligence and strict liability claims for failure to state a claim was error because the statute of repose had not run. They claim because IDOT completely refurbished the auger less than 15 years before Oppedahl's injury, the time period in the statute reset. Thus, they assert, since the refurbishment was less than 15 years before Oppedahl's injury, the statute of repose does not bar Plaintiffs' claims. "We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo." Mo. Broadcasters Ass'n v. Lacy, 846 F.3d 295, 300 (8th Cir. 2017).

"[A] statute of repose . . . operates to prevent a cause of action from even accruing . . . extinguish[ing] a cause of action after a fixed period of time . . . , regardless of when the cause of action accrued." Estate of Ryan v. Heritage Trails Assocs., Inc., 745 N.W.2d 724, 728-29 (Iowa 2008) (internal quotation marks omitted). Neither the Iowa Supreme Court nor this Court has considered the question of whether refurbishing a product resets the time period in a statute of repose. However, the district court previously considered this issue, and it found there was "no basis upon which to conclude the Iowa Supreme Court would create [a refurbishment] exception." Alley v. Johnson & Johnson, No. 1:02-CV-40043, 2004 WL 180256, at *5 (S.D. Iowa Jan. 5, 2004).

We need not decide whether the Iowa Supreme Court would adopt a refurbishment exception because, even if the exception applied, Plaintiffs' claims would still be barred. The existing case law in which courts have adopted a refurbishment exception to statutes of repose requires that the refurbishment be completed by the party being held accountable for the harm—i.e., to hold the original manufacturer liable for injuries caused by a refurbished product, the product must have actually been refurbished by the manufacturer not a third party. See Butchkosky v. Enstrom Helicopter Corp., 855 F. Supp. 1251, 1255 (S.D. Fla. 1993) (stating that the refurbishment exception applies "where the products at issue had been re-acquired by the manufacturer and had been completely refurbished prior to being re-sold to new customers" (citing Denu v. Western Gear Corp., 581 F. Supp. 7 (S.D. Ind. 1983); Fugate v. AAA Machinery & Equip. Co., 593 F. Supp. 392 (E.D. Tenn. 1984); and Rollins v. Cherokee Warehouses, Inc., 635 F. Supp. 136, 137 (E.D. Tenn. 1986)); see also Miller v. Honeywell Int'l Inc., No. IP 98-1742 CMS, 2001 WL 395149, at *6 (S.D. Ind. Mar. 7, 2001) (noting two "situations under Indiana law in which the liability of a manufacturer can be revived, and a new ten year repose period begun[:] [f]irst, if the manufacturer supplies replacement parts for the product and the replacement parts are the cause of the plaintiff's injury . . . [;] [and] [s]econd, if the manufacturer rebuilds the product, to the point of significantly extending the life of the product and rendering it in like-new condition"); Divis v. Clarklift of Neb., Inc., 590 N.W.2d 696, 700-01 (Neb. 1999) (finding that the original manufacturer of a forklift was not liable and the statute of repose did not begin anew because the original manufacturer did not conduct the refurbishment).

Here, it was IDOT, not Mobile Drill, that conducted the auger refurbishment. We reject Plaintiffs' argument that regardless of who conducted the refurbishment the manufacturer should remain liable. Not only is this argument against the weight of the case law on the topic, but it also creates the potential for unfairly holding manufacturers liable for an unrelated third party's faulty refurbishment of their products. Therefore, we find that the refurbishment exception does not apply and the

district court did not err in dismissing Plaintiffs' negligence and strict liability claims.[4]

### B. Negligent Entrustment

Plaintiffs next argue that the district court erred when it granted summary judgment to Mobile Drill on their negligent entrustment claim. We review an order granting summary judgment de novo. Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018). The parties dispute which standard would apply in a negligent entrustment case—the Restatement (Second) of Torts § 390 (1965) or the Restatement (Third) of Torts: Physical and Emotional Harm § 19 (2010). The Iowa Supreme Court has not expressly adopted either standard for negligent entrustment.

We believe that the Iowa Supreme Court likely would not apply negligent entrustment against a product manufacturer when the claim relates to the sale of the product. Assuming, however, that negligent entrustment applies, we still need not determine which standard the Iowa Supreme Court would adopt because, under either standard, Plaintiffs' claims fail.

The Restatement (Second) of Torts § 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

---

[4]Plaintiffs argue that we should certify the refurbishment question to the Iowa Supreme Court. Because we find that even if the Iowa Supreme Court adopted a refurbishment exception it still would not apply, we decline to certify the question.

Comment b. to § 390 elaborates on the knowledge requirement:

> [T]he supplier knows or has reason to know that such other is likely to use [the chattel] dangerously, as where the other belongs to a class which is notoriously incompetent to use the chattel safely, or lacks the training and experience necessary for such use, or the supplier knows that the other has on other occasions so acted that the supplier should realize that the chattel is likely to be dangerously used, or that the other, though otherwise capable of using the chattel safely, has a propensity or fixed purpose to misuse it.

When courts apply the knowledge requirement, they focus on specific facts that the supplier knows about the person to whom it entrusted the chattel. Compare Pritchett v. Kimberling Cove, Inc., 568 F.2d 570, 577 (8th Cir. 1977) (finding defendant liable for negligently entrusting a boat to a boy because it had knowledge of the boy's "very young age, poor school record, little training in safe operation of the motorboats and no training whatsoever in their operation at night, and 'very limited' experience"), and Collins v. Ark. Cement Co., 453 F.2d 512, 514 (8th Cir. 1972) (finding the company had reason to know that an exploding cherry bomb was likely to cause injury when the company's foreman was on notice "that employees were not faithful in returning the unused cherry bombs or were using them in horseplay around the plant"), with White v. Chrysler Corp., 364 N.W.2d 619, 624 (Mich. 1984) (finding that the corporations were not liable for negligent entrustment because, in order for them to have knowledge of a contractor's lack of safety precautions, they would have to have "a duty to make themselves aware of peculiarities of the contractor that would put them on notice of a likelihood that the contractor would use the chattel in an unsafe manner," which does not exist).

Plaintiffs argue that Mobile Drill had the requisite knowledge to support a negligent entrustment claim because it was aware: (1) that it had sold augers to IDOT, (2) that there is a weak regulatory structure for drilling activities in the United States, and (3) that people have suffered from catastrophic injuries from auger accidents in

the past. We agree with the district court's finding that this is insufficient to support a claim that Mobile Drill had knowledge that IDOT would use the auger "in a manner involving unreasonable risk of physical harm." Restatement (Second) of Torts § 390. It is undisputed at this point that Mobile Drill sold IDOT the auger, but Plaintiffs have not alleged any specific facts that would indicate IDOT had a history of irresponsible or incompetent behavior with the use of heavy machinery. Nor have they presented any specific evidence that Mobile Drill knew or should have known that IDOT, due to youth, inexperience, or otherwise, would use the auger in a manner involving unreasonable risk of physical harm to its employees. See id. § 390 and § 390 cmt. b. Accordingly, we find that Mobile Drill is not liable for negligent entrustment under § 390.

The Restatement (Third) of Torts § 19 states: "The conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party." Comment f in § 19 expands on the foreseeability requirement:

> The actor who merely loans a car to an ordinary friend for the evening is not guilty of negligence in entrusting the car, even though there is some abstract possibility that the friend might drive the car negligently or recklessly in the course of the evening. Yet, in other situations, an actor engaging in certain conduct can foresee a considerable risk, either on account of the general prospect of other persons' negligence during the relevant frame of time and place, or because the actor has knowledge of the propensities of the particular person or persons who are in a position to act negligently.

The several illustrations in Comment e of § 19 all state that the defendant had knowledge of specific facts about the third party that made it foreseeable the third party would engage in improper conduct. This is similar to the case law applying a knowledge requirement, as those cases required the plaintiffs to show that the defendants were aware of specific facts reflecting the third party's history of

-9-

irresponsible or incompetent behavior.  See Pritchett, 568 F.2d at 577; Collins, 453 F.2d at 514; White, 364 N.W.2d at 624.  As such, we find that the analysis under § 390 and § 19 is the same.  Plaintiffs have not presented any facts indicating that it was foreseeable to Mobile Drill that IDOT would use the auger in an unsafe way.  Simply because there is some abstract possibility that an auger could be used negligently or recklessly does not impose liability on Mobile Drill for selling the auger—particularly to an entity such as IDOT, which has vast experience in the use of heavy machinery.  Therefore, we find that summary judgment in favor of Mobile Drill on Plaintiffs' negligent entrustment claims was appropriate.

## III. Conclusion

For the foregoing reasons, we affirm the district court's order.

_____