MUSSER *v.* EAST SIDE GEAR & TOOL COMPANY.

1. MASTER AND SERVANT—INJURY TO CONTRACTOR'S EMPLOYEE BY DEFECTIVE INSTRUMENTALITY OF CONTRACTEE.

A contractee who agrees to provide a contractor with a particular instrumentality for the purpose of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain, during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor or during the period while it was being used by the contractor.

2. SAME—FOOT INJURY—DEFENDANT'S KNOWLEDGE OF DEFECTIVE CONDITION OF CHAINFALL—PLEADING—EVIDENCE.

Plaintiff, contractor's employee, whose foot was crushed by reason of defective condition of defendant's chainfall, used in handling contractor's 1,500- to 1,700-pound cast-iron surface plate at defendant's place of business, was not, as a matter of law, entitled to recover from defendant for such injuries where plaintiff's declaration does not aver that defendant knew of such defect and he is not shown to have had actual knowledge of the defect.

Appeal from Wayne; Callender (Sherman D.), J. Submitted April 14, 1949. (Docket No. 40, Calendar No. 44,362.) Decided June 9, 1949.

Case by Martin R. Musser against William C. Beckenhauer, doing business as East Side Gear & Tool Company, for personal injuries

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 27 Am Jur, Independent Contractors, §§ 32, 36.
[1, 2] Nonliability of an employer in respect of injuries caused by the torts of an independent contractor. 18 ALR 801, 816.

sustained while in defendant's place of business. Verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment for defendant.

*Alexander, Cholette, Buchanan, Perkins & Conklin,* for plaintiff.

*Louis J. Colombo, Jr.,* for defendant.

Bushnell, J. Defendant William C. Beckenhauer, doing business as East Side Gear & Tool Company, has appealed from a judgment of $7,900 in favor of plaintiff Martin R. Musser, who was injured in defendant's place of business while in the employ of the Perfect Surface Plate Company, an independent contractor.

Musser, a scraper-hand and machine repairman, on November 27, 1942, went with his foreman and others to Beckenhauer's place of business. They took with them a cast-iron surface plate, 3 feet by 6 feet, which weighed from 1,500 to 1,700 lbs. This plate was to be used as a precision gauge block or template in connection with the resurfacing of the bed of defendant's universal boring machine.

Musser and his fellow employees took the plate from their truck with their own chainfall and lowered it onto a hand truck. Their chainfall, however, could not be used to raise the plate above the bed of the boring machine on which they were to work, and in order to save the time of going back to their own shop and getting another chainfall they used one which belonged to Beckenhauer. The surface plate had a highly finished surface, hand-scraped to a tolerance of three-tenths of one thousandth of an inch, and it was necessary to protect it carefully against damage. In order to move it from the delivery truck to the boring machine it was placed on the hand truck

with its ribs down and its face up. In order to use it as a gauge on the bed of the boring machine it was necessary to invert the plate so that its face would be down. Defendant's chainfall was suspended from an I-beam with a traveling trolley, to which it was connected by an S-hook about 9 feet from the ground. This chainfall carried a notice indicating that it had a lifting capacity of one ton; and in addition Beckenhauer's employee, Henry Meinhardt, was questioned as to its carrying capacity. Chains were fastened around the surface plate, which was protected by blocks of wood at the points of contact, and while the plate was being lifted from a horizontal to a vertical position the S-hook broke and the chainfall struck Don R. Richards, plaintiff's foreman, on the head. The plate then slipped and crushed Musser's foot, resulting in multiple fractures and injury to the soft tissue, and subsequent amputation of the second, third and fourth toes.

Beckenhauer was called by plaintiff for cross-examination as an adverse witness.* He stated that he employed some 35 to 40 men in his shop and that on the morning in question neither he nor his son, who was his foreman, was present. He said that the chainfall was inspected from time to time and had recently handled a job weighing a little over a ton, and, so far as he knew, was in good condition at the time of the accident.

Richards stated that when he examined a piece of the broken hook after the accident it appeared to be crystallized and that it had been welded at one time. He said that a part of the surface of the break was dirty and a part clean, and that the dirty surface would indicate an old crack.

It is undisputed that Beckenhauer was under no duty to provide the Surface Plate Company with

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

any equipment whatsoever for the performance of its work; and, at best, this record only discloses that the equipment in question was gratuitously furnished.

In the light of these facts, the first question is the nature of the duty which defendant Beckenhauer owed to Musser.

In considering this question it will be assumed (though strenuously argued to the contrary by defendant) that Meinhardt had, and exercised, at least apparent authority to permit plaintiff and his fellow employees to use Beckenhauer's chainfall.

The general rules applicable hereto are stated in 35 Am Jur, p 591, under the heading "Master and Servant," § 162, entitled "Defects in Instrumentalities Furnished by Contractee," as follows:

"The courts have in numerous cases applied the doctrine that a contractee who agrees to provide a contractor with a particular instrumentality for the purpose of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain, during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor. In some cases, the right of action was predicated mainly upon the consideration that the instrumentality in question belonged to the category of things which are variously designated by the expressions 'imminently,' or 'inherently,' or 'intrinsically,' dangerous. Another theory with respect to the rationale of the principal employer's liability is indicated by statements to the effect that the claimant was entitled to recover on the ground that the case belonged to the category of those in which 'a resulting injury * * * might have been anticipated as a direct * * * consequence of the performance of the work contracted for, if reasonable care was omitted in the course of

the performance.' It has been ruled that the duty of the contractee with respect to seeing that an instrumentality furnished by him is free from defects is to be regarded as extending to the whole of the period during which it is being used by the contractor.

"Where the instrumentality was gratuitously furnished by the contractee for the purposes of the stipulated work, the rule appears to be that an action brought by a contractor's servant to recover for injuries caused by a defect therein is maintainable, or not maintainable, according to whether the contractee had actual knowledge of the existence of the defect at the time when the transfer of the instrumentality occurred."

For a comprehensive treatment of contractees' liability, see 44 ALR beginning at page 932, particularly § 34, page 1078 *et seq.*

The testimony in the instant case does not show that Beckenhauer, the contractee, had actual knowledge of the existence of any defect in the chainfall; nor does plaintiff's declaration aver that Beckenhauer knew of such defect. The application of the rules of law hereinbefore stated makes it unnecessary to discuss other questions raised by the parties. Defendant's motion for a directed verdict should have been granted.

The judgment is reversed and the cause is remanded for entry of judgment in favor of defendant. Costs to appellant.

Sharpe, C. J., and Boyles, Reid, North, Dethmers, Butzel, and Carr, JJ., concurred.