## MUSCAT v KHALIL

Docket No. 81341. Submitted January 14, 1986, at Detroit.—Decided February 11, 1986.

Plaintiff, Mario Muscat, brought an action in the Wayne Circuit Court against defendants, Thomas M. Khalil, Judith A. Khalil and Khalil Bros., Inc., seeking damages for injuries received while performing exterior painting and roofing work for defendant Thomas Khalil at the latter's home. The defendants moved for a summary judgment, which was granted, Harold M. Ryan, J. Plaintiff then brought a motion for reconsideration, which was denied, James E. Mies, J. Plaintiff appeals from the order granting defendants motion for summary judgment and from the order denying plaintiff's motion for reconsideration. *Held:*

1. The trial court did not err in finding that the "inherently dangerous activity" doctrine was inapplicable to this case.

2. The trial court did not err in granting defendants' motion for summary judgment as to the theory of negligent entrustment. Plaintiff cannot succeed under that theory because defendants' entrustment of the extension ladder to him was entirely reasonable.

3. The trial court did not err in granting defendants' motion for summary judgment as to plaintiff's "retained control" theory of negligence. Defendants had not retained the degree of control which would justify imposing upon them liability for the injuries sustained by plaintiff.

4. Summay judgment was properly granted to the defendants on plaintiff's "defective instrumentality" theory. Plaintiff cannot trace the alleged defect in the ladder to the hands of the

References

Am Jur 2d, Independent Contractors §§ 24 *et seq.*

Am Jur 2d, Master and Servant §§ 139 *et seq.*

Am Jur 2d, Premises Liability §§ 39 *et seq.,* 62 *et seq.*

Liability of employer with regard to inherently dangerous work for injuries to employees of independent contractor. 34 ALR4th 914.

Modern status of rules conditioning landowner's liability upon status of injured party as invitee, licensee, or trespasser. 22 ALR4th 294.

defendants and prove that the defendants' negligence was the cause of the defect.

5. Plaintiff's argument for the application of the "business invitee" doctrine is without merit. The trial court properly dismissed this argument by way of summary judgment.

6. A question of fact did not exist as to the ownership of the ladder. In any event, the question of ownership of the ladder is irrelevant since not one of plaintiff's theories of recovery was based in whole or in part upon the ownership of the ladder.

Affirmed.

1. MASTER AND SERVANT — NEGLIGENCE — INDEPENDENT CONTRACTORS — INHERENTLY DANGEROUS ACTIVITY.

The inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees; where harm occurs as a result of the failure to take special precautions in work necessarily involving danger to others unless great care is used, employees of independent contractors and third parties, who do not have the authority to ensure that the necessary care is used, are rightfully excepted from the general rule.

2. MASTER AND SERVANT — NEGLIGENCE — NEGLIGENT ENTRUSTMENT.

The theory of negligent entrustment provides that one who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely, because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them; plaintiffs, to prove negligent entrustment, must show either that defendant knew the entrustee was not to be entrusted or that defendant had special knowledge of the entrustee which would put defendant on notice.

3. NEGLIGENCE — NELGIGENT ENTRUSTMENT — INHERENTLY DANGEROUS TOOLS — EXTENSION LADDERS.

An extension ladder is not a tool which is so inherently dangerous that an 18 year old must be presumed incapable of safely using it.

4. MASTER AND SERVANT — NEGLIGENCE — RETAINED CONTROL THEORY.

The retained control theory of negligence provides an exception to the general rule that a landowner is not responsible for

injuries caused by a carefully selected independent contractor; the retained control exception provides that an owner is responsible if he does not truly delegate—if he retains control of the work—or if, by rule of law or statute, the duty to guard against risk is made nondelegable; whether the duty to guard against a certain risk is to be classified as nondelegable is to be decided on a case-by-case basis.

5. Master and Servant — Negligence — Defective Instrumentality Theory.

The defective instrumentality theory of negligence provides that an employer who agrees to provide an independent contractor with a particular instrumentality for the purpose of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain, during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor.

6. Negligence — Business Invitees — Duty.

The rule in Michigan regarding business invitees is that when one invites others onto one's premises he must exercise ordinary care and prudence to keep the premises reasonably safe.

*Zeff & Zeff & Materna* (by *Donald M. Fulkerson),* for plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike),* for Thomas and Judith Khalil.

*Robert L. Ziolkowski,* for Khalil Bros., Inc.

Before: Hood, P.J., and J. H. Gillis and J. M. Batzer,* JJ.

Per Curiam. Plaintiff appeals as of right from an October 11, 1984, order denying plaintiff's motion for reconsideration of an order of summary judgment entered in favor of the defendants.

This case arose out of an incident which oc-

* Circuit judge, sitting on the Court of Appeals by assignment.

curred while plaintiff was engaged in performing exterior painting and roofing work for defendant Thomas Khalil at the latter's home. Plaintiff, then 18 years of age, knew Thomas Khalil as a neigh-bor but had not previously worked for him. However, he had worked as an attendant in a parking lot owned by defendant Khalil Bros., Inc. Plaintiff and a friend, Raymond Montes, agreed to perform the necessary work for a fee to be determined after the job was completed. It was also agreed that Thomas Khalil would supply all tools and materials.

On September 1, 1977, after determining that a taller ladder was needed to perform the work, plaintiff approached Thomas Khalil with a request for such a ladder. Thomas instructed plaintiff to obtain a key to the "Peanut Factory", which was owned by Khalil Bros., Inc., from his brother Monier Khalil. Monier informed plaintiff that a ladder was located right inside the door to the Peanut Factory.

After obtaining the ladder, plaintiff and Montes returned to the house and extended the ladder to the point they needed to reach. Plaintiff climbed the ladder while Montes held it at the bottom. Plaintiff intended to enter the attic by means of the ladder and tie a rope around a beam in order to bring tar up to the roof. Plaintiff also intended to tie himself to a safety harness, which he had borrowed from his father. However, while plaintiff was in the attic, Montes left his position at the bottom of the ladder. When plaintiff returned and began ascending the ladder from the attic to the roof, the base of the ladder apparently slipped, at which point it began to "telescope" down. Plaintiff fell, receiving serious injuries which resulted in partial paralysis.

In attacking the order of summary judgment on

appeal, plaintiff first contends that the trial court erred in finding the "inherently dangerous activity" doctrine inapplicable to this case. We agree with the trial court. As explained in the recent Michigan Supreme Court case *Bosak v Hutchinson*, 422 Mich 712; 375 NW2d 333 (1985), "[t]he inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees". *Bosak*, p 724. Further, the Court noted that:

"Michigan has recognized the exception for activities which reasonably can be foreseen as dangerous to third parties, [citing *Grinnell v Carbide & Carbon Chemicals Corp*, 282 Mich 509; 276 NW 535 (1937) *Watkins v Gabriel Steel Co*, 260 Mich 692; 245 NW 801 (1932); *Wight v H G Christman Co*, 244 Mich 208; 221 NW 314 (1928); *Olah v Katz*, 234 Mich 112; 207 NW 892 (1926); *Inglis v Millersburg Driving Ass'n*, 169 Mich 311; 136 NW 443 (1912)] and has, on occasion, allowed the doctrine to be applied to employees of the contractor performing the dangerous work. *McDonough v General Motors Corp*, 388 Mich 430; 201 NW2d 609 (1972); *Vannoy v City of Warren*, 15 Mich App 158; 166 NW2d 486 (1968), *lv den* 382 Mich 768 (1969)." *Bosak*, p 724.

Also relied upon by the *Bosak* Court in its efforts to delineate the extent of the doctrine were the following excerpts from the Restatement of Torts, 2d:

" 'One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by failure of the contractor to exercise reasonable care to take such precautions, even though the employer has

provided for such precautions in the contract or otherwise. [2 Restatement Torts, 2d, § 416, p 395.]

\* \* \*

" 'One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger. [2 Restatement Torts, 2d, § 427, p 415.]' " 422 Mich 726.

We note from each of the passages quoted above that the independent contractor himself is not mentioned as a party intended to benefit from the inherently dangerous activity doctrine. Rather, the passages refer to "third parties" or, more generally, "others", and employees of the contractor. We do not believe that these references were inadvertent since none of the cases cited by the plaintiff involves a recovery by the independent contractor himself for damages sustained as a result of his own negligence in performing the work of the employer. We believe that an important distinction exists between employees of an independent contractor and the independent contractor himself. Since an employee has no control over the manner in which the work is to be performed and must simply carry out the orders and directions of his employer, he stands in a position more closely akin to the innocent bystander, or "third party". The independent contractor himself, on the other hand, was hired specifically for his ability to perform the work properly and is given complete control over the manner in which the job is to be completed. Thus, where harm occurs as a result of the failure to take "special" precautions in work " 'necessarily involving danger to others, unless

great care is used' ", *Bosak, supra,* p 727, quoting
*Inglis v Millersburg Driving Ass'n, supra,* p 331,
employees and third parties, not having the au-
thority to ensure that the necessary care is used,
are rightfully excepted from the general rule
which immunizes the employer of the independent
contractor from liability. However, the indepen-
dent contractor himself in most instances is in a
better position to determine when and where
"great care" and "special precautions" are war-
ranted and is empowered with the authority to
ensure that such care is exercised.[1] Therefore,
without considering whether the activity involved
herein was in fact "inherently dangerous", we
conclude that the position advanced by plaintiff
would result in an unwarranted extension of the
"inherently dangerous activity" exception to the
immunity afforded employers of independent con-
tractors.

---

[1] See *McDonough v General Motors Corp,* 388 Mich 430, 455-456;
201 NW2d 609 (1972) (T. E. BRENNAN, J., *dissenting):*

"[T]he rule of liability is designed to protect innocent third parties
injured by the execution of an inherently dangerous undertaking. The
rule is not designed, nor was it ever intended to benefit the contractor
who undertakes the dangerous work, or his employees.

"Thus, if I employ a contractor to remove a tree stump from my
yard by use of explosives, I am liable to my neighbor whose garage is
damaged by the concussion. This is because it is I who have set the
project in motion; it is I who have created the unusual peril; it is for
my benefit that the explosives were used. As between myself and my
neighbor, I ought not to be permitted to plead that it was the
contractor's negligence and not my own which damaged his property.

"But if the contractor should blow up his own turck, I should not be
liable. He is the expert in explosives and not me. I had neither the
legal right nor the capability to supervise his work. The same would
be true if the contractor's workman had injured himself, or been
injured by the carelessness of a fellow workman or the negligence of
his employer. Neither the contractor nor his employees are 'other', as
contemplated in Cooley's statement of the rule. Indeed, they are privy
to the contract which creates the peril."

Although Justice BRENNAN's comments insofar as they pertain to
an employee of an independent contractor have been rejected by
Michigan courts, we believe that the reasoning as it applies to the
independent contractor himself is still noteworthy.

The next issue raised by plaintiff concerns his theory of negligent entrustment, which the trial court rejected as inapplicable to the facts of this case. Michigan courts have adopted the following definition of the theory from 2 Restatement Torts, 2d, § 392:

> " 'One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them' " *Moning v Alfono,* 400 Mich 425, 443-444; 254 NW2d 759 (1977).

As a result of further refinement of the applicable standard of care in *Fredericks v General Motors Corp,* 411 Mich 712; 311 NW2d 725 (1981), it is now clear that, in order to prove negligent entrustment, "plaintiffs must show either that defendant knew the entrustee was not to be entrusted or that defendant 'had special knowledge of [the entrustee] which would put defendant on notice' ". *Buschlen v Ford Motor Co (On Remand),* 121 Mich App 113, 117; 328 NW2d 592 (1982), *aff'd* 421 Mich 192; 364 NW2d 619 (1984), quoting *Fredericks, supra,* p 720.

Plaintiff argues that, because of his youth (18 years of age) and inexperience, defendants and "[e]ven the most uninformed layperson *knew* or *should have known* that [plaintiff] was likely to use the various supplied equipment, specifically the extension ladder, in some unsafe manner". (Emphasis in original.) As we see it, the success of plaintiff's argument depends upon one's acceptance of the proposition that an extension ladder is so inherently dangerous that an 18 year old

must be presumed incapable of safely using the tool. We cannot accept this argument. An extension ladder is an essentially uncomplicated instrumnent which gains a propensity for danger only because it will allow the user to reach great heights. This danger is most obvious to all but children of tender years whose intellectual capacity does not permit them to reason to such conclusions. We must assume that 18 year olds such as plaintiff have achieved the intellectual development which would take them out of the "tender years" category. Thus, only by proving that the defendants knew plaintiff to be a careless risktaker who might be expected to use the ladder with little or no concern for his own safety could the plaintiff succeed under the theory of negligent entrustment. The facts as admitted by plaintiff prove this not to be the case. Plaintiff was concerned enough for his own safety to come equipped with a safety harness, which he quite tragically had not begun wearing prior to the accident. Further, plaintiff had the common sense to instruct his assistant to secure the ladder by standing at the base. Under these circumstances, we conclude that plaintiff cannot succeed under the proposed theory because the defendants' entrustment of the extension ladder to him was in fact entirely reasonable. Therefore, the trial court did not err in granting defendants' motion for summary judgment as to the theory of negligent entrustment.

Plaintiff next contends that the trial court erred in granting defendants' motion for summary judgment as to his "retained control" theory of negligence. The theory in question was explained in *Funk v General Motors Corp*, 392 Mich 91; 220 NW2d 641 (1974), as an exception to the general rule that a landowner is not responsible for injuries caused by a carefully selected independent

contractor. The retained control exception provides that "[a]n owner is responsible if he does not truly delegate—if he retains 'control' of the work—or if, by rule of law or statute, the duty to guard against risk is made 'nondelegable' ". *Funk,* p 101. Whether the duty to guard against a certain risk is to be classified as nondelegable is to be decided on a case-by-case basis.

To begin, we note that the plaintiff's status as the actual independent contractor rather than as an employee of the independent contractor or some third person raises the question whether the "retained control" theory can be utilized by plaintiff as a method of recovery. However, we need not address the question since it is clear that defendants have not retained the degree of control which would justify imposing upon them liability for the injuries sustained by plaintiff. In *Funk,* General Motors, the owner of a building to be constructed, performed such functions as drawing up building plans, writing contractual specifications and acting as architectural supervisor. Further, a General Motors representative, who was present at the job site daily, could terminate the employment of any prime contractor or subcontractor within 24 hours. Under these facts, the *Funk* Court noted that "[t]he law does not * * * absolve an owner who acts in a superintending capacity and has knowledge of high degrees of risk faced by construction workers from responsibility for failing to require observance of reasonable safety precautions". *Funk,* pp 106-107. (Footnote omitted.) The Court concluded that, despite its designation as owner, the degree of control both retained and exercised by General Motors justified holding it responsible for its own negligence in failing to implement reasonable safety precautions. *Funk,* p 108.

In contrast to the situation in *Funk,* the defendants herein exercised no control whatsoever over the performance of the work. The defendants' involvement was limited entirely to supplying the paint, brushes, and other equipment, including the extension ladder, necessary to perform the work. Defendant Thomas Khalil was not even home on the day of the accident to offer supervisory assistance to the plaintiff. We find no parallel in these facts to the degree of control both retained and exercised by General Motors in *Funk,* and we agree with the trial court's rejection of plaintiff's "retained control" theory. Parenthetically, we also note that plaintiff's argument, if successful, would raise an additional issue, *i.e.,* whether his claim would be barred by the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131). If defendants had in fact exercised the degree of control alleged by plaintiff in his effort to advance the application of the "retained control" theory, his status as an independent contractor would be very questionable. Under such circumstances, plaintiff would more likely be viewed as an employee of the defendants, in which case his efforts to recover damages under a tort theory would be barred by the exclusive remedy provision. See *Dobbs v Journal Co,* 137 Mich App 663; 358 NW2d 32 (1984). This provision did not stand as a bar to the plaintiff in *Funk* because that plaintiff was unquestionably an employee of the subcontractor rather than the landowner, General Motors, and thus his claim against General Motors was not affected by the exclusive remedy provision. *Funk,* p 99.

Plaintiff next relies upon *Musser v East Side Gear & Tool Co,* 325 Mich 188; 37 NW2d 890 (1949), to support his argument that his "defective instrumentality" theory should have been pre-

sented to the jury. The *Musser* Court cited 35 Am Jur, Master and Servant, § 162, p 591, for the proposition that " 'a contractee who agrees to provide a contractor with a particular instrumentality for the purpose of the stipulated work is ordinarily liable for any injury which a servant of the contractor may sustain, during the progress of the work, by reason of a defect which was known to the principal employer, or which he might have discovered by the exercise of reasonable care, at the time when the instrumentality was turned over to the contractor ". *Musser,* p 191. Even assuming the general applicability of this section, we cannot agree with plaintiff's position. Assuming for purposes of argument that the ladder was owned by defendant Khalil Bros., Inc., as plaintiff contends, his theory is that Khalil Brothers, as purchaser of the ladder from some entity in the chain of distribution, and defendants Thomas and Judith Khalil, whose connection to the ladder is at best that of borrowers, should be held responsible for the manufacturer's failure to place warning labels on the ladder. We cannot accept this proposition. Since plaintiff's lawsuit is based upon a negligence theory, it is incumbent upon him to trace the alleged defect in the ladder to the hands of the defendants and prove that the defendants' negligence was the cause of the defect. *Marderosian v Stroh Brewery Co,* 123 Mich App 719, 724; 333 NW2d 341 (1983). We are convinced that the task cannot be achieved. There is no reason to assume that defendants should have been any more aware of the absence of instructions on the ladder than plaintiff. Furthermore, even if they were consciously aware of the lack of instructions, should they, as mere purchasers and borrowers of the ladder, have known that the absence of such instructions constituted a defect? We think not,

and thus plaintiff's reliance on *Musser v East Side Gear & Tool Co, supra,* does not support his request for a reversal of the trial court's ruling.

The next theory relied upon by plaintiff is the "business invitee" doctrine, which, according to plaintiff, supports his claim for recovery under the following logic, to wit, that "[b]y ordering [plaintiff] to use the extension ladder and by failing to instruct him or otherwise insure of its safe use, [defendants] created a dangerous condition on their premises which they should have known about".

This argument is without merit. As stated most recently in *Swartz v Huffmaster Alarms Systems, Inc,* 145 Mich App 431; 377 NW2d 393 (1985), the rule in Michigan regarding business invitees is that when one who invites others onto his premises must exercise ordinary care and prudence to keep the premises reasonably safe. *Swartz,* pp 434-435. The problem with plaintiff's argument is that he does not point to any dangerous condition with regard to the premises, *i.e.,* the Khalils' home and surrounding land, but, rather, alleges only a defect in a ladder which plaintiff himself brought onto the land. The ladder was not a fixture and in fact was not even stored at the Khalil residence. Simply put, the premises was not rendered unreasonably dangerous by the introduction of a ladder which did not contain warning labels since the premises itself was entirely unaffected. The "business invitee" doctrine could afford no avenue of relief to plaintiff and plaintiff's argument for its application was thus properly dismissed by the trial court.

Finally, plaintiff argues that a question of fact existed as to whether defendant Khalil Brothers owned the ladder, and thus summary judgment in its favor was improperly granted. We cannot

agree. Kahlil Bros., Inc., included with its motion an affidavit of Monier Khalil stating that he, and not the corporation, owned the ladder used by plaintiff. Further, he indicated that the ladder was for his own personal use. This claim is supported by plaintiff's deposition, where he testified that Thomas Khalil instructed him to obtain a key for the "Peanut Factory" from Monier Khalil in order to retrieve the ladder. Monier Khalil then informed him where the ladder was stored.

In any event, we find the question of ownership to be irrelevant. We have considered each of the theories advanced by plaintiff and have concluded that none will offer a basis for relief. Not one of these theories was based in whole or in part upon the ownership of the ladder. Therefore, after giving every reasonable doubt to the plaintiff, we agree with the trial court that no factual development is possible which would support plaintiff's claim for damages against the defendants. Under these circumstances, a motion for summary judgment is properly granted, and, thus, the lower court's denial of plaintiff's motion for reconsideration was appropriate. *Anderson v Kemper Ins Co,* 128 Mich App 249, 252-253; 340 NW2d 87 (1983).

Affirmed.