Hewell JAMAR, Appellant,

v.

Gayle PATTERSON and Brandi
Istre, Appellees.

No. 14–93–00122–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 19, 1995.

Rehearing Overruled Oct. 19, 1995.

Martin L. Peterson, Stephenville, for appellant.

Russell S. Briggs, Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION ON MOTION FOR REHEARING

EDELMAN, Justice.

Appellant's motion for rehearing is overruled. Our opinion of August 24, 1995, is

withdrawn and the following opinion is substituted in its place.

Hewell Jamar appeals the judgment entered against him for negligent entrustment on the grounds that: (1) he violated no legal duty owed to Brandi Istre; (2) the accident was proximately caused by Istre rather than Jamar; (3) two elements of the cause of action were not submitted to the jury; (4) the evidence was insufficient to show negligent entrustment; and (5) the evidence was insufficient to support the award of damages and prejudgment interest. We affirm as modified.

While driving Jamar's dune buggy, twelve-year-old Istre was involved in an accident and suffered extensive facial injuries. Gayle Patterson, Istre's mother, individually and as next friend of Istre, brought suit against Jamar for damages sustained as a result of the accident.

The jury found that Jamar's negligence in entrusting the dune buggy to Istre proximately caused her damages, and awarded $145,000.00 to Istre for her injuries, and $20,000.00 to Patterson for Istre's past medical expenses. The trial court entered judgment for these amounts plus interest.

Because the sufficiency of the evidence is challenged in several points of error, we will outline it before going further.

At trial, Istre testified to the following facts: The night before the accident, Jamar's granddaughter, Brandi Jamar,[1] asked Jamar if it would be "okay" if she and Istre went driving in Jamar's dune buggy. Jamar then asked Istre if she had driven before, and Istre replied that she had driven on her father's lap. Jamar said "go ahead and do it, just be very careful."

The next morning, at a property owned by Jamar, Jamar handed Brandi Jamar and Istre the keys to the dune buggy and said, "[h]ave fun. Have a good time. Be careful." Nothing was said regarding who was permitted to drive the dune buggy, or how it should

---

1. For purposes of this opinion, Hewell Jamar will be referred to as "Jamar," and Brandi Ja- mar will be referred to by that name.

be driven. Nor did the dune buggy have seat belts.

Brandi Jamar drove first with Istre as a passenger. The girls later decided to switch, and, in Jamar's presence, Istre drove with Brandi Jamar shifting the manual transmission for her because Istre did not know how to do so. Jean Dukes, a relative of Istre, was also there at the time.

At one point, Istre drove by Jamar and asked him how she was doing, and he answered, "you're doing just great, just great." When the girls got out of the dune buggy briefly, Istre asked Jamar a second time how she was doing and he again said, "[f]ine, just fine." Later that day, Istre drove the dune buggy around a curve, lost control, and hit a tree, injuring her face.

Istre's mother, Gayle Patterson, testified at trial that while at the hospital after the accident, Dukes and Jamar each told her that they were sorry that they had allowed Istre to drive the dune buggy; and that, had they known Istre did not really know how to drive, they would not have let her do it. Patterson further testified that Dukes and Jamar both told her that they had seen Istre drive the dune buggy.

Jamar testified at trial to the following facts: He had no conversation the night before the accident or the morning preceding the accident as to whether Brandi Jamar and Istre could drive the dune buggy or whether Istre had driven before. He knew Istre was about 12 years old at the time. Brandi Jamar was then about 15, and was allowed to drive the dune buggy anytime. He never told Brandi Jamar or Istre whether Istre could drive the dune buggy, and gave them no rules, warnings or supervision about driving it. Jamar saw Brandi Jamar drive the dune buggy, but never saw Istre drive it. He never asked Brandi Jamar why Istre had been driving. At the hospital following the accident, he did not tell Patterson that he had seen Istre drive or that he would not have let her do so if he had known she did not know how.

Dukes testified at trial that there was no conversation between Jamar, Brandi Jamar and Istre about driving the dune buggy the night or morning before the accident until the girls were about to do so. She never saw Istre drive the dune buggy, and did not remember whether she told Patterson that she was sorry and did not know that Istre did not know how to drive.

Brandi Jamar testified at trial to the following facts: She did not talk to Istre about the dune buggy until they arrived at Jamar's property and saw it. She then just told Jamar that she and Istre were going to drive it, and they did. Jamar never said that Istre couldn't drive the dune buggy, but just told them to be careful. Istre asked Brandi Jamar if she could drive, and told her that she knew how to drive and that her father had a dune buggy that she had driven. Brandi Jamar did not ask Jamar if Istre could drive, but decided herself to let Istre drive. Istre had not driven more than a minute before they wrecked. Istre lost control, went too fast and hit a tree. Jamar never saw Istre drive the dune buggy.

In the first of his five points of error, Jamar contends that there was no evidence or finding [2] that he violated any duty owed to Istre. He argues that liability for negligent entrustment extends only to third parties, not the driver to whom the vehicle was entrusted.

■ The elements of negligent entrustment are: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence proximately caused the accident. *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 571 (Tex.1985).

■ We have not been cited or found a Texas case which specifically addresses whether recovery for negligent entrustment is limited to third parties. However, injury to a third party is not included among the

---

**2.** This "no finding" contention is unclear in that the jury verdict and judgment each found Jamar

liable for negligent entrustment.

elements of negligent entrustment. *See id.* In addition, at least one Texas case has allowed an under-age driver of a vehicle to recover against its owner for negligence. *See Ellis v. Moore,* 401 S.W.2d 789 (Tex. 1966). Moreover, recovery by the driver against the owner has been recognized in other jurisdictions where negligent entrustment was proven and not barred by contributory negligence.[3] No case has been cited or found from another jurisdiction which limits such recovery to third parties. Furthermore, negligent entrustment is actionable by the driver under the Restatement (Second) of Torts § 390 cmt. c (1965). We are also aware of no policy reason for denying recovery to the driver for negligent entrustment.

Jamar argues that "duty" must be distinguished from "authority,"[4] that a person is generally under no duty to protect another from his own negligence,[5] and that an entrustor must have control over a vehicle in order to have a duty to ensure that it is used safely. *See Salinas v. General Motors Corp.,* 857 S.W.2d 944, 948–49 (Tex.App.—Houston [1st Dist.] 1993, no writ). Although these principles are generally true, they do not negate liability for negligent entrustment, or provide a basis to treat drivers differently from third parties in terms of their right of recovery thereunder. Based on the foregoing, we do not have sufficient grounds to conclude that Jamar owed no legal duty to Istre for negligent entrustment.

In addressing Jamar's no evidence point, we consider only evidence supporting the finding and disregard evidence and inferences to the contrary. *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 275–76 (Tex.1995). We will do so by reviewing the evidence supporting each element of the claim for negligent entrustment.

As to the first element, "entrustment" was defined in the jury charge to mean express or implied permission to drive the vehicle in question.[6] Express permission is that which is affirmatively stated, while implied permission may be inferred from conduct between the parties in which there is acquiescence or lack of objection signifying consent. *See Royal Indem. Co. v. H.E. Abbott & Sons, Inc.,* 399 S.W.2d 343, 345 (Tex. 1966). Istre testified to the effect that Jamar gave her express permission to drive the dune buggy the night before the accident, and impliedly gave her permission to do so by seeing her drive, saying she was doing fine, and not telling her not to drive.

The second and third elements of negligent entrustment are that the driver was unlicensed, incompetent or reckless, and the owner knew or should have known it. *Williams,* 699 S.W.2d at 571. In this case, Jamar admitted that he knew that Istre was about twelve years old at the time of the accident, and, thus, well below the age at which she could have been licensed to drive. *See* Tex.Rev.Civ.Stat.Ann. art. 6687b § 4(1) (Vernon Supp.1995).

3. *See, e.g., Allstate Ins. Co. v. Reliance Ins. Co.,* 85 Misc.2d 734, 380 N.Y.S.2d 923, 932 (N.Y.1976); *Shepherd v. Barber,* 20 Mich.App. 464, 174 N.W.2d 163, 164 (Div.3, 1970); *Greenwood v. Gardner,* 189 Kan. 68, 366 P.2d 780, 782 (1961); *see generally* Ward Miller, Annotation, *Negligent Entrustment: Bailor's Liability to Bailee Injured Through His Own Negligence or Incompetence,* 12 A.L.R.4th 1062 (1982); Karen L. Ellmore, Annotation, *Negligent Entrustment of Motor Vehicle to Unlicensed Driver,* 55 A.L.R.4th 1100 (1987).

Cases in which such recovery was available but denied because of inadequate proof or contributory negligence by the driver include: *Meachum v. Faw,* 112 N.C.App. 489, 436 S.E.2d 141 (N.C.Ct.App.1993); *Muscat v. Khalil,* 150 Mich.App. 114, 388 N.W.2d 267 (Mich.Ct.App.1986); *Cherry v. Kelly Serv., Inc.,* 171 Ga.App. 235, 319 S.E.2d 463 (Ga.Ct.App. 1984); *Keller v. Kiedinger,* 389 So.2d 129, 133 (Ala.1980) (expressly rejecting limitation of lia-

bility to third parties, and holding that cause of action lies for bailee against bailor for negligent entrustment); *Perez v. G & W Chevrolet, Inc.,* 274 Cal.App.2d 766, 769 (Ct.App.—5th Dist.1969); *Thomasson v. Winsett,* 310 S.W.2d 33, 39 (Mo.App.—Springfield, 1958).

4. *See Dayton Hudson Corp. v. Eldridge,* 742 S.W.2d 482, 486 (Tex.App.—Dallas 1988, writ denied).

5. *See Rampel v. Wascher,* 845 S.W.2d 918, 924–25 (Tex.App.—San Antonio 1992, writ denied).

6. No authority has been cited for this definition, nor is "entrustment" defined in 1 State Bar of Texas, Texas Pattern Jury Charges PJC 6.12 (1987). Since no objection was made to it in this case, we apply it in this case without approving or disapproving of its validity or its inclusion in the jury charge.

As to the fourth and fifth elements, that Istre was negligent and her negligence caused the accident, Istre and Brandi Jamar each testified that the accident happened when Istre drove around a curve, lost control and hit a tree. We therefore find some evidence supporting the existence of each element of negligent entrustment, and overrule Jamar's first point of error.

In his second point of error, Jamar contends that the proximate cause of the injury was Istre's operation of the dune buggy, which was not subject to his control. Yet, the jury was instructed to find that his alleged negligence was necessarily a proximate cause if it found that Istre's operation was a proximate cause.[7] Jamar complains that the evidence was insufficient to show that *his* negligence was a proximate cause.

We find no record that Jamar objected at trial to the jury question and instruction submitted. On the contrary, Jamar submitted a requested jury question which similarly instructed that his negligence was the proximate cause of the collision if the operation of the vehicle by Istre was a proximate cause.[8] Although his request was refused, having requested such a proximate cause instruction at trial, Jamar waived any objection to the question on appeal. *See General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 920 (Tex.1993).

Moreover, Jamar's negligence in entrusting the motor vehicle to an unlicensed driver was proved to be a proximate cause of her injury by showing that Istre operated the vehicle negligently and that her negligence was a proximate cause of the accident. *See Spratling v. Butler,* 240 S.W.2d 1016, 1017 (Tex.1951); 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 6.12 (1987).

Alternatively, Jamar asserts that Istre's recovery was barred by the doctrine of assumption of the risk. However, Jamar neither pled nor requested a jury question on any affirmative defense, and, thus, waived any. TEX.R.CIV.P. 94, 279; *Shoemake v. Fogel,* 826 S.W.2d 933, 937 (Tex.1992). Furthermore, the affirmative defense of assumption of risk is no longer recognized in Texas. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 758 (Tex.1975). Therefore, Istre's recovery was not barred by assumption of the risk, and Jamar's second point of error is overruled.

In his third point of error, Jamar argues that the question submitted to the jury was not sufficient to support the judgment because it did not ask whether Istre was negligent or whether her negligence was a proximate cause of the accident.[9] Instead, it asked whether the *operation of the vehicle* by the driver to whom it was entrusted was a proximate cause of the accident.

With this instruction, the jury could have theoretically based an affirmative finding of liability on a belief that the accident was caused by a non-negligent operation of the vehicle. If so, the required elements of negligence on the part of the driver, and that negligence proximately causing the accident

---

7. The liability question submitted to the jury was:
   Did the negligence, if any, of Hewell Jamar *proximately cause the occurrence in question?* As to Hewell Jamar, "negligence" means entrusting a vehicle to an incompetent or unlicensed driver if the entrustor knew or should have known that the driver was incompetent or unlicensed. Such negligence is a proximate cause of the collision if the operation of the vehicle by the driver to whom the vehicle was entrusted is a proximate cause of the collision. "Entrustment" means express or implied permission to drive the vehicle in question.
   Answer "Yes" or "No."
   Answer: Yes

8. The question requested by Jamar contained the following language:

Hewell Jamar was negligent if he entrusted the dune buggy to an incompetent or unlicensed driver, and either knew or should have known such person was an incompetent or unlicensed driver.
Such negligence, if any, proximately caused the damages, if any, sustained by the Plaintiffs if the operation of the dune buggy by a person to who [sic] it was entrusted proximately caused such damages.

9. On rehearing, Jamar also complains that the jury was not asked whether Jamar should have reasonably anticipated that an injury would result. However, we have been cited and are aware of no authority supporting such a question or instruction in a negligent entrustment submission.

would be omitted from the verdict. *See, e.g. Williams,* 699 S.W.2d at 571.

When a ground of recovery consists of more than one element, and one or more of the elements needed to sustain the ground of recovery are submitted and found by the jury, and one or more of such elements are omitted from the charge without request or objection, and there is factually sufficient evidence to support a finding thereon, the omitted elements will be deemed found in a manner to support the judgment. Tex. R.Civ.P. 279; *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990).

Here, we again note that Jamar not only failed to object to this omission at trial, he also affirmatively requested a jury question and instruction which contained the same omission. In addition, as noted above, Istre and Brandi Jamar both testified that Istre lost control of the dune buggy and hit a tree. This is some evidence that Istre was negligent, and that her negligence caused the accident. Accordingly, the elements omitted from the jury charge are deemed found, and Jamar's third point of error is overruled.

■ In his fourth point of error, Jamar claims that the evidence was factually insufficient to show that Jamar gave permission to Istre to operate the dune buggy when he knew or should have known that she was incompetent to drive it.

Again, according to both the question submitted to the jury, and that proposed by Jamar, "entrustment" means express or implied permission to drive the vehicle in question. Express permission is that which is affirmatively stated, while implied permission may be inferred from conduct between the parties in which there is acquiescence or lack of objection signifying consent. *See Royal Indem.,* 399 S.W.2d at 345. In reviewing the jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all of the evidence, and set aside the verdict only if it so contrary to the overwhelming weight of the evidence as to be

clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Istre testified that Jamar gave her permission to drive the dune buggy the night before the accident. She testified further that she drove past Jamar and asked him how she was doing, and he said she was doing just fine. Istre, Brandi Jamar, Dukes and Jamar each said that Jamar never told Istre she could not drive the dune buggy. This testimony would support an inference of acquiescence or lack of objection signifying consent by Jamar. Gayle Patterson testified that Jamar and Dukes each told her at the hospital that he thought Istre knew how to drive, and that he would not have *let* her drive had he known that she did not know how.

Jamar and Dukes testified that Jamar never told Istre she could drive the dune buggy, and that they did not see Istre drive. Brandi Jamar said that she was the person who allowed Istre to drive.

Thus, depending on the jury's assessment of the credibility of the witnesses, there was conflicting evidence of both express and implied permission, and, therefore, entrustment. Although the evidence was disputed, we cannot conclude that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, Jamar's fourth point of error is overruled.

In his fifth point of error, Jamar complains of the award of medical expenses and prejudgment interest thereon because (1) there was no evidence that Istre's mother, Patterson, had actually paid the medical bills at the time of trial, (2) there was no evidence that interest had been charged by the medical care providers on the unpaid amount, and (3) the amount of medical expenses awarded exceeded the amount proven.[10]

The plaintiffs introduced affidavit evidence from the hospital that treated Istre that her medical bills totaled $17,603.36. This evidence was introduced without objection and was undisputed. However, no evidence was introduced whether these bills were ever ac-

10. The appellees contend that Jamar failed to preserve error on this point. *See* Tex.R.App.P. 52(a). However, Jamar specifically challenged the evidence of medical expenses in his motion for new trial, and thereby preserved his complaint on this point.

tually paid. The jury verdict and judgment awarded past medical expenses of $20,000. Istre and Patterson have agreed to a reformation of the judgment to reduce this award to $17,603.36 to conform to the evidence.

In order to recover for medical expenses which have been incurred, it is not required that those expenses actually be paid before trial. *See Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 689 (Tex.1981) (citing *San Antonio & A.P. Ry. Co. v. Moore,* 72 S.W. 226, 228 (Tex.Civ.App.—San Antonio 1903, writ ref'd) regarding medical expenses). Thus, the lack of evidence of actual payment of medical expenses in this case does not prevent their recovery.

Jamar argues that the award of prejudgment interest on the medical expenses, absent proof that they had either already been paid or that interest would be charged on them, amounted to a windfall similar to an award of prejudgment interest on future damages. *See, e.g., Missouri Pac. R.R. Co. v. Lemon,* 861 S.W.2d 501, 529–30 (Tex. App.—Houston [14th Dist.] 1993, remanded in aid of settlement).

In *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554–55 (Tex.1985), the Texas Supreme Court stated that "a plaintiff is not entitled to recover prejudgment interest on damages until those damages have actually been sustained. Until that time, the plaintiff has not lost the use of the money he ultimately receives from the defendant." However, in 1987, the Legislature mandated that prejudgment interest be awarded judgments in wrongful death, personal injury, and property. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1995). Since this statute makes no distinction between past and future damages awarded in a judgment, it allows recovery of prejudgment interest on both. *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 324 (Tex.1994). Therefore, the award of prejudgment interest on Istre's unpaid medical expenses was proper. Jamar's fifth point of error is overruled, and the judgment is affirmed as modified to reflect a reduction in the award to Patterson from $20,000 to $17,603.36, and to

recalculate the amount of prejudgment interest thereon accordingly.