SQUIRES v GENERAL MOTORS CORPORATION

Docket No. 88998. Submitted June 5, 1987, at Lansing. Decided August 1, 1988.

Barry Squires, John Brightwell and others brought an action in the Kalamazoo Circuit Court against General Motors Corporation and others seeking damages for injuries to their hands, wrists and arms which allegedly occurred while welding automobile frames. The plaintiffs are all employees of Checker Motors, an outsource contractor, where the frames were welded for General Motors. The trial court, Richard R. Lamb, J., granted General Motors' motion for summary disposition based on a failure to state a claim upon which relief can be granted. Plaintiffs appealed.

The Court of Appeals *held:*

1. The plaintiffs pled facts which, if true, would justify a finding that General Motors is liable to the plaintiffs. If the allegations are true, injury to plaintiffs was a natural and wholly foreseeable result of General Motors' affirmative act of inducing Checker Motors to use a production system known to cause injury to employees.

2. General Motors' alleged liability does not arise out of any asserted employer-employee relationship with the plaintiffs. The Workers' Disability Compensation Act does not confer immunity from tort liability upon General Motors.

3. Liability cannot be predicated upon General Motors' request to Checker Motors for increased production in the absence of pleadings that suggest General Motors advised Checker Motors as to how production should be increased, restricted Checker's options in any respect, or advised them to prefer one option over another.

Reversed and remanded.

1. Torts — Due Care — Foreseeable Harm.

A manufacturer may be found to have a duty to employees of an

References

Am Jur 2d, Independent Contractors §§ 25 *et seq.*

Am Jur 2d, Summary Judgment § 27.

Am Jur 2d, Workmen's Compensation §§ 52 *et seq.*

See the Index to Annotations under Independent Contractors.

outsource contractor to use due care to avoid harm to such employees where it is foreseeable that the employees may be harmed by conduct, including affirmative acts, of the manufacturer.

2. Torts — Pleading — Duty — Summary Disposition.

A duty is sufficiently pled to survive a motion for summary disposition based upon a failure to expressly plead a duty where the plaintiff's allegations clearly imply a duty.

3. Workers' Compensation — Tort Liability — Immunity from Liability.

The Workers' Disability Compensation Act does not confer immunity from tort liability where such liability does not arise out of an employer-employee relationship (MCL 418.131; MSA 17.237[131]).

*Charfoos & Christensen, P.C.* (by *David R. Parker* and *L. S. Charfoos*), for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Ernest R. Bazzana* and *James R. Kohl*), for General Motors Corporation.

Before: Walsh, P.J., and Cynar and R. L. Tahvonen,* JJ.

R L. Tahvonen, J. Plaintiffs appeal as of right from a trial court order granting defendant General Motors Corporation's motion for summary disposition, MCR 2.116(C)(8). We reverse.

Plaintiffs are employees of Checker Motors who claim to have suffered injuries to their hands, wrists and arms while welding automobile frames. The frames were being welded for General Motors which had outsourced production to Checker. According to plaintiffs, General Motors convinced Checker to install a merry-go-round production system in which each frame was placed on a carousel-like device and rotated through twelve

---

* Circuit judge, sitting on the Court of Appeals by assignment.

welding stations to completion. As part of the production system, General Motors also convinced Checker to utilize continuous wire-fed welding guns rather than stick welding using individual welding rods. With a welding gun, plaintiffs pulled a trigger mechanism to feed the welding material to the welder. Over time, all plaintiffs developed debilitating pain to the index finger used to depress the trigger mechanism and also to the middle and index fingers of the other hand used to support the gun. Plaintiffs alleged they each eventually developed tendonitis or carpal tunnel syndrome in their dominant hand and wrist.

On June 27, 1985, plaintiffs filed a second amended complaint. In the count alleging negligence against General Motors, plaintiffs stated:

38. That this defendant knew or should have known that the combination of the wire fed MIG gun with the merry-go-round created potential and real danger to the welders involved.

39. That this defendant had actual knowledge prior to engaging in activities with Checker Motor that GMC's employees were having hand problems and that said employees were welders.

40. That this defendant actively engaged through its employees on numerous occasions in setting up the production activities at Checker.

41. That this defendant supplied the trunnions on the merry-go-round so that the system would be operational.

42. That this defendant was on actual notice that problems were occurring with users of the equipment and still this defendant continued to push Checker to use the equipment and to produce frames for defendant GMC. Further said defendant, in the face of actual knowledge, requested increased daily production from Checker.

43. That this defendant, through its employees, was negligent in its advice and counsel to Checker

and was negligent in requesting increased production from Checker in light of the injuries that were occurring, of which injuries said defendant was well informed.

In granting General Motors' motion for summary disposition, the trial judge relied on *White v Chrysler Corp,* 421 Mich 192, 204; 364 NW2d 619 (1984), in which the Supreme Court stated:

> The common law and the Legislature impose responsibility for job safety on the contractor, not on the employer of the contractor. However, because of the bar of the exclusive remedy provision of the workers' compensation act, there generally is no tort liability for failure to provide workplace safety. The proposed theory of liability would evolve a special rule for the benefit only of employees of a contractor injured as a result of the use of chattels in production pursuant to an outsource contract. A common-law cause of action should not be evolved solely or primarily to avoid a statutory limitation. We are not persuaded that such a special rule for the benefit only of a discrete class of seriously injured workers is justified.

The trial judge here concluded:

> Assuming that there was an agreement between GM and Checker and that GM would help Checker establish the merry-go-round system and establish the method of producing these parts, [and] I'm not making that finding, I'm just assuming for the purpose of testing this motion that is correct, [and] I believe that's the best statement that can be made for the plaintiff's claim [sic]. I believe that even under that assumption, *White* is controlled [sic], and these injured employees do not have a claim against General Motors.
>
> So General Motor's motion for summary disposition is granted.

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim as pled, determined from an examination of the pleadings alone. The trial and appellate courts must accept as true all well-pled allegations together with any inferences which may be fairly drawn from those allegations. The motion should be granted only where the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Attard v Adamczyk,* 141 Mich App 246, 248-249; 367 NW2d 75 (1985).

Assuming the truth of plaintiffs' allegations, the issue becomes whether the trial court correctly determined that General Motors owed no duty to plaintiffs for breach of which General Motors may be found liable.

We hold that *White, supra,* is not dispositive and that plaintiffs have pled facts which, if true, would justify a finding that General Motors is liable to these plaintiffs.

In *White, supra,* the plaintiffs suffered serious injuries to their hands while operating power presses for outsource contractors employed to produce automobile parts for the Ford Motor Company and Chrysler Corporation. After collecting workers' compensation benefits, the plaintiffs sought recovery from Ford and Chrysler on theories that those defendants "(i) negligently entrusted the die sets in the power presses to the component parts manufacturers, and (ii) negligently supplied them with chattels (the die sets) dangerous for the intended use." *White, supra,* p 197.

The Supreme Court rejected both theories. As to negligent entrustment, the Court held that neither Ford nor Chrysler entrusted or supplied the dies, *id.,* p 201, and that the dies were never dangerous

to the person to whom they were entrusted, *id.,* p 202. As to the theory of negligently supplying a dangerous chattel, the Court held that the automobile companies had no duty to place guards on the die sets or to warn the component manufacturers of hazards involved in their use. There was no such duty, reasoned the Court, because the component manufacturer is legally responsible to its employees for workplace safety and the automobile companies cannot be deemed to foresee that the dies would be used in an unguarded, unsafe press, *id.,* p 198.

In short, *White* holds that manufacturers *are not* liable to employees of outsource contractors for injuries caused by unguarded presses using dies supplied by the manufacturers. The rationale for the holding is that the obligation to provide a safe workplace belongs to the outsource contractor and the manufacturer has no reason to foresee a breach of that obligation. Since there is no foreseeable risk of harm associated with merely supplying dies, there is no duty of care imposed upon the manufacturers for breach of which the employees can recover.

General Motors' alleged involvement in Checker's operations and claimed knowledge of the risk of injury here goes far beyond the claims against Ford and Chrysler in *White.* In this case, plaintiffs say General Motors advised and convinced Checker to install the carousel operation and to use wire-fed welding guns. General Motors' own employees allegedly installed the production system at Checker. All this, according to the pleadings, after General Motors actually knew that its own employees, using the same system, were being injured. According to the pleadings, the system was installed without warning by General Motors to Checker or Checker's employees. As a result,

say plaintiffs, they suffered the same problems that General Motors employees had encountered earlier.

If these facts are true, and we must for now assume they are, injury to plaintiffs was a natural and wholly foreseeable result of General Motors' act of "convincing" Checker to use the production system in question. It is the foreseeability of harm to plaintiffs occasioned by the conduct of General Motors that imposes upon General Motors a duty to use due care to avoid that harm. *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967).

General Motors argues that the trial court's decision should be upheld for reasons upon which the trial court itself did not rely. Specifically, General Motors claims that the plaintiffs failed to expressly plead a duty in their complaint. Where a plaintiff's allegations clearly imply a duty, the duty is sufficiently pled. An express averment of duty in such circumstances is unnecessary to survive a motion for summary disposition. *Geveke v Grand Rapids & I R Co*, 57 Mich 589, 593; 24 NW 675 (1885). This is such a case.

General Motors also asserts that reversal here would subject manufacturers to tort liability for the failure of component manufacturers to observe workplace safety precautions with respect to tools, equipment and other chattels. As we have noted, this is not a case involving the *failure* of a manufacturer to involve itself in the safety of a component manufacturer's workplace. Rather, this case involves an alleged affirmative act by a manufacturer to induce a component parts manufacturer to use a *system* known to cause injury to employees. There is nothing in the duty asserted by the plaintiffs here that imposes upon a manufacturer an obligation to inquire into the peculiarities of a component parts manufacturer's operation.

General Motors also asserts that if it is not sufficiently independent from Checker to be immune from tort liability, then it should benefit as a coemployer from the immunity provisions of the Workers' Disability Compensation Act that shield Checker, MCL 418.131; MSA 17.237(131). General Motors' alleged liability does not in this case arise out of any asserted employer-employee relationship with plaintiffs. As a result, the Workers' Disability Compensation Act does not confer immunity upon General Motors. See, for example, *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974).

Finally, and more successfully, General Motors asserts that liability cannot be predicated upon General Motors' request for increased production. We agree. There is nothing in the pleadings that suggests General Motors advised Checker as to how production should be increased. Checker could have added workers, added shifts, added lines or increased the production rate. There is no suggestion that General Motors restricted Checker's options in any respect or advised them to prefer one option over another. In the absence of such a claim, General Motors is correct that it cannot be held liable for simply requesting increased production.

Plaintiffs have stated a claim upon which relief can be granted. We express no opinion on the distinct issue of whether that claim can be factually supported. MCR 2.116(C)(10).

Reversed and remanded. Costs to appellants.