**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0436n.06
Filed: June 27, 2006

**No. 05-1691**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ROBERT DALE BYRUM and SUE ANNE BYRUM, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| INTERNATIONAL PAPER COMPANY and | ) | WESTERN DISTRICT OF MICHIGAN |
| SECURITAS SECURITY SERVICES USA, | ) | |
| INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** Robert and Sue Byrum appeal the district court's grant of summary judgment in favor of International Paper Company (International) on Robert Byrum's negligence claim. Byrum, an employee of an independent contractor hired by International to provide security and other services, sued International after he suffered a heart attack during a firefighting training session organized and run by International. Byrum raises two issues on appeal. He argues first that, by ordering him to attend the training with the knowledge that he had not had a physical examination, International voluntarily assumed a duty to ensure that he was fit to participate. Second, Byrum argues that genuine issues of material fact exist as to his claims that

International negligently failed to supervise, provide a safe work site, and warn about the dangers of its firefighting training. We affirm.

## I. Background

Securitas Security Services, USA, Inc. (Securitas) is an independent contractor that provided emergency response and security services for International at International's Quinnesec, Michigan, paper mill. The obligations of both Securitas and International were governed by a contract dated February 14, 2002.[1] The contract provided, among other things, that Securitas had "full responsibility for supervising and directing its own employees."

In addition to the February 2002 contract, an undated Emergency Response Services memorandum (Services Memorandum) further delineated Securitas's obligations with respect to its employees. The Services Memorandum provided that Securitas was responsible for, at its own expense, interviewing, investigating, drug screening, and physically examining its new employees. All plant personnel were required to undergo a post-offer physical examination. In addition, all "plant protection officers" were required to have a "health assessment" before participating in International's Respiratory Protection Program, fire brigade, HAZMAT team, or rescue team.

The Services Memorandum obligated Securitas to submit to International a copy of each employee's medical certificate "showing that the minimum physical standards have been met."

---

[1]The contract names International and Pinkerton's Inc. as the parties, but Securitas later purchased Pinkerton's.

However, Dennis Doll, Byrum's supervisor at Securitas, testified in his deposition that Securitas generally did not provide the medical certificates to International. Securitas notified International only if an employee failed a physical examination.

Despite the Service Memorandum's requirement that Securitas conduct a physical examination of each new employee, Securitas and International later agreed that Securitas could postpone the examinations, because of their expense, until an employee reached "Level II" certification. Securitas certified its employees at different levels according to their training and experience. An employee was eligible for the first certification, Level I, after two years of employment and after the employee became familiar with plant procedures regarding security, fire systems, and hazardous materials. Level II certification required emergency medical training. Level III certification required firefighting training and, once reached, enabled an employee to participate in Securitas's fire brigade at the mill. Even with the agreement to delay the physical examinations, Securitas employees were still required to have an examination before participating in the firefighting training.

Securitas hired Byrum in April 2001. Pursuant to its agreement to delay the physical examinations, Securitas did not provide Byrum with a post-offer examination. Byrum initially worked as a reserve officer at the rear gate of the mill, letting trucks in and out. After six months, Securitas promoted Byrum to plant protection officer. As a plant protection officer, Byrum monitored vehicles entering and leaving the mill and inspected safety equipment.

On April 10, 2002, Byrum suffered a heart attack while participating in a firefighting training exercise organized by International and held at Northeast Technical College in Green Bay, Wisconsin. The district court accurately described the events surrounding Byrum's injury:

> International coordinated a fire training exercise for International and Securitas employees in Green Bay, Wisconsin. Jim Rose, an International employee, designed and supervised the program. Although Byrum had not reached Level I certification (and had not undergone a physical examination), he attended the training exercise. The parties dispute whether International required Byrum's attendance or whether Byrum himself volunteered to attend the training. Dennis Doll, Byrum's direct supervisor with Securitas, testified that 2-3 days prior to the training exercise, Byrum requested permission to attend the training exercise. . . . Byrum offers his own deposition testimony in which he states Jim Rose mandated that he attend the fire fighting training exercise.

> Nevertheless, Byrum attended the program. The training required performance of various fire fighting tasks while wearing full fire fighting gear and a self-contained breathing apparatus. After completing the second training exercise of the day, Byrum was resting outside the training facility when he began vomiting and feeling a tightness in his chest. An ambulance was summoned and he was taken to a local hospital where the medical staff determined that he had suffered a heart attack. While receiving treatment, Byrum went into cardiac arrest which required CPR, defibrillation, and ultimately, coronary bypass surgery.

*Byrum v. Int'l Paper Co.*, No. 2:04-CV-101, 2005 WL 1189607, at *2 (W.D. Mich. May 19, 2005) (citations to the record omitted).

Byrum brought suit against International in a Michigan state court. In his complaint, Byrum asserted that International had been negligent in a number of ways, including: failing to adequately supervise the firefighting training session, failing to provide a safe work site, failing to warn of the hazards associated with the equipment and training, and failing to require a physical examination

before allowing him to participate in the training.[2] The complaint also sought damages for the "loss of the services, love, companionship, and consortium" sustained by Byrum's wife, Sue Ann Byrum. International removed the case to the federal district court below.

International filed a motion for summary judgment, and the district court granted summary judgment in favor of International in May 2005. *See id.* at \*1. The district court first held that "[a]lthough Byrum asserted in his complaint that International failed to provide a safe work environment, negligently supervised the training exercise, and failed to warn him of hazardous equipment, he has not produced any evidence supporting these allegations." *Id.* at \*3. Regarding Byrum's claim that International negligently failed to provide him a physical examination, the district court ruled that, as a matter of law, International owed Byrum no such duty. *Id.* at \*7. International owed no duty under the "inherently dangerous activity" doctrine because, under Michigan law, the doctrine does not apply when the injured party is the employee of an independent contractor. *Id.* at 4-5. In addition, the court ruled that International had not voluntarily assumed the duty to provide a physical examination by organizing and running the training because (1) the contract between International and Securitas expressly placed the duty on Securitas; (2) Byrum failed to allege a duty owed by International that was separate and distinct from the contract between

---

[2]International filed a third-party complaint against Securitas seeking indemnification pursuant to the parties' contract. However, after the district court granted summary judgment in favor of International as to Byrum's claim, the court granted summary judgment in favor of Securitas. *See Byrum*, 2005 WL 1711188, at \*2. Because Byrum's negligence claim against International failed, International had not suffered any loss that would require reimbursement under the indemnification provision. *Id.*

International and Securitas, as required by *Fultz v. Union-Commerce Association*, 683 N.W. 2d 587 (Mich. 2004); and (3) Michigan Administrative Code r. 408.17310(2) placed the duty to provide an examination on Securitas as Byrum's employer. *Byrum*, 2005 WL 1711188, at *6-7.

Byrum now appeals, raising two arguments. First, Byrum argues that International voluntarily assumed a duty to ensure that he was physically capable of participating in its firefighting training when International ordered him to attend knowing that he had not undergone a physical examination. Second, Byrum argues that the district court erred by ruling that no genuine issues of material fact existed as to whether International negligently failed to supervise, provide a safe work site, and warn about the dangers of the training.

## II. Analysis

### A. Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts, as well as any inferences that can be drawn from them, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a factual issue is genuine, a court must decide "whether reasonable jurors could find by a preponderance of the

evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.     Duty to Ensure That Byrum Had a Physical Examination**

International did not voluntarily assume a duty to ensure that Byrum was physically capable of participating in its firefighting training because, given Securitas's agreement to provide physical examinations and the absence of any evidence that International knew that Byrum had not had an examination, it was not foreseeable that Byrum would suffer injury. Whether a duty exists is a question of law for the court to decide. *Harts v. Farmers Ins. Exch.*, 597 N.W.2d 47, 50 (Mich. 1999). Generally, an employer of an independent contractor may not be held liable in negligence to the employees of the contractor, *Bosak v. Hutchinson*, 375 N.W.2d 333, 338 (Mich. 1985); the independent contractor alone is responsible for job safety, *Funk v. Gen. Motors Corp.*, 220 N.W.2d 641, 644-45 (Mich. 1974) (stating the general rule in construction cases while recognizing exceptions), *overruled in part on another ground by Hardy v. Monsanto Enviro-Chem Sys.*, 323 N.W.2d 270, 273 (Mich. 1982). There are, however, two exceptions to this rule: (1) where the employer retained control of a "common work area," *Ormsby v. Capital Welding, Inc.*, 684 N.W.2d 320, 323 (Mich. 2004), or (2) where the contractor's work involves an "inherently dangerous activity," *DeShambo v. Anderson*, 684 N.W.2d 332, 335 (Mich. 2004).

The district court in this case ruled that *DeShambo* precluded Byrum, as an employee of the independent contractor, from relying on the inherently dangerous activity exception, and Byrum

does not challenge that decision on appeal. Instead, Byrum argues that International is liable under the separate common-law theory that, if "one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 591 (Mich. 2004). Byrum argues that International voluntarily assumed a duty to ensure that he had a physical examination once it ordered him to attend its firefighting training with the knowledge that he had not had an examination.[3]

Byrum's framing of the duty is slightly different from that of International and the district court. The district court held, and International now argues, that International did not voluntarily assume a duty to provide Byrum with a physical examination because, among other reasons, the parties and Michigan law placed the duty upon Securitas. *See Byrum*, 2005 WL 1711188, at *6-7. This is not the same duty asserted by Byrum. Instead, Byrum argues that International had a duty to ensure that he was physically qualified for its firefighting training because it ordered him to attend *with the knowledge that he had not had a physical examination*.

---

[3]We assume that such a duty can be voluntarily assumed under Michigan law. A recent decision of the Michigan Court of Appeals questions whether an employer of an independent contractor can voluntarily assume a duty toward the employees of the contractor, given the general rule of nonliability and the carefully crafted exceptions. *See Martel v. J.M. Olson Co.*, No. 263670, 2005 WL 3479819, at *3 (Mich. Ct. App. Dec. 20, 2005) ("[C]ases . . . generally limit the liability of general contractors to the common work area exception. Although we do not reach the question whether a general contractor may ever voluntarily assume a heightened duty under such cases, the cases reflect the courts' careful consideration of which duties the law or society has concluded a general contractor should owe a subcontractor's employees."). However, in another case, *Squires v. General Motors Corp.*, the court appears to have imposed such a duty. 427 N.W.2d 630, 633 (Mich. Ct. App. 1998) (holding that General Motors owed a duty to the employees of its independent contractor because the employees were injured as a result of GM's convincing the contractor to install a new production system).

Byrum's claim nevertheless fails because there is no evidence that International knew that Byrum had not had a physical examination, and thus it was not foreseeable that Byrum would suffer injury from the firefighting training as a result of his heart condition. Michigan case law does not outline the exact elements required to prove the voluntary assumption of a duty, but in deciding the existence of a duty courts generally consider the foreseeability of the risk, the relationship between the parties, and any other policy considerations that may be relevant. *See Buczkowski v. McKay*, 490 N.W.2d 330, 333-34 (Mich. 1992). In this case, if International knew that Byrum had not had a physical examination, then Byrum's injury could have been foreseeable because firefighting training is a demanding activity that could foreseeably harm someone with a pre-existing heart condition. Thus, International could have a duty to ensure that Byrum had an examination if it knew that he had not already had one. *See Squires v. Gen. Motors Corp.*, 427 N.W.2d 630, 633 (Mich. Ct. App. 1998) (holding that GM owed a duty to the employees of its independent contractor because it convinced the contractor to install a new production system knowing that its own employees had been injured by the same system).

But Byrum presents no evidence that International knew that he had not had an examination. It is undisputed that Securitas notified International only if an employee failed an examination, and thus International would not have known whether Byrum had passed an examination. Byrum argues that

> International Paper required [a medical] certification only after a plant protection officer achieved Level II certification. Here, it knew that Mr. Byrum had not even been certified as a Level I plant protection officer on the day of the training session

and therefore knew no such physical exam had been or was required to by undertaken by [Securitas].

If, as Byrum contends, International knew that Byrum was not certified at Level II, then, taking the facts in the light most favorable to Byrum, International also could have known that he had not had an examination because it agreed that Securitas could delay the examinations until employees reached Level II. However, Byrum does not offer any evidence to support his assertion that International knew that he was not a Level II employee. Because Byrum did not provide such evidence, we assume that International was unaware that Byrum had not received a physical examination.

Without the knowledge that Byrum had not had an examination, it was not foreseeable to International that Byrum would suffer a heart attack because the Services Memorandum expressly placed the duty to provide a physical examination upon Securitas. Although, taking the facts in the light most favorable to Byrum, we must assume that International ordered Byrum to attend its training, International still relied upon Securitas to provide the examinations. Because Byrum's injury was not foreseeable, no duty arose for International to exclude Byrum from the firefighting exercise. *See Valcaniant v. Detroit Edison Co.*, 679 N.W.2d 689, 692 (Mich. 2004) (holding that, because the plaintiff's injury was not foreseeable, there was no need for the court to consider the other factors bearing on the existence of a duty).

This conclusion is supported by a recent Michigan Court of Appeals decision. In *Whiteye v. Lanzo Construction Co.*, a city hired an engineering firm as a consultant for its underground water

main project. Nos. 258095, 258090, 2005 WL 3506901, at *1 (Mich. Ct. App. Dec. 22, 2005). The consultant recommended that the city award the project to Lanzo, an independent contractor. *Id.* Plaintiff's decedent, an employee of Lanzo, was subsequently killed when a trench wall collapsed on him. *Id.* Plaintiff sued the consultant, alleging among other things that it had been negligent in failing to stop Lanzo from using unsafe construction methods. *Id.* The Michigan Court of Appeals affirmed the trial court's grant of summary judgment in favor of the consultant, holding that the consultant had no duty to inspect the work site for safety issues because the contract expressly declared Lanzo to be responsible for safety. *Id.* at *5. While the consultant assumed a duty in the construction contract to inspect for technical issues, its duty to inspect went no further. *Id.* Similarly, because the Services Memorandum expressly placed the responsibility for physical examinations on Securitas, International had no such duty absent knowledge that Byrum had not had an examination.

Byrum's remaining arguments to prove the existence of a duty are without merit. First, Byrum argues that International should be "estopped" from relying on the Services Memorandum because International later waived the requirement that Securitas provide post-employment physical examinations. Byrum provides no legal support for this apparently equitable argument, and in any event this argument fails because International still required that Securitas provide the examinations before employees could participate in the firefighting training. Second, Byrum argues that International should have foreseen that he could suffer a heart attack because he had fallen to his knees from exertion in an earlier firefighting training session. This argument also fails because,

first, Byrum presents no evidence that falling to one's knees necessarily implies that the one has a dangerous heart condition (e.g., it could just be fatigue) and, second, Securitas was nevertheless still responsible for providing the physical examination (and, for all International knew, could have provided Byrum with an examination since the earlier incident).

**C.      International's Failure to Supervise, Provide a Safe Work Site, and Warn of the Dangers Associated with Firefighting Training.**

Byrum argues that the district court erred by ruling that no genuine issues of material fact existed as to whether International negligently failed to supervise, provide a safe work site, and warn about the dangers of its firefighting training, but he never provided any evidence to support these claims in his response to International's motion for summary judgment.  Nor does he point to any evidence on appeal.  Thus, the district court properly granted summary judgment as to these claims.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.